## ARLOWE D. SUTTER v. STATE OF NEBRASKA.

### FILED SEPTEMBER 27, 1920. No. 21313.

1. **Criminal Law:** JEOPARDY. Under section 9126, Rev. St. 1913, a jury charged with the trial of a criminal case, after deliberating for so long a time "that there is no probability of agreeing," may be discharged by the court, and the accused held to a further trial, without any infringement of the constitutional provision that a person shall not "be twice put in jeopardy for the same offense." Const., art. I, sec. 12.

2. ———: JURY: DISCHARGE. When a jury in a capital case have been deliberating for 36 hours, excluding necessary time for sleep, meals, and exercise, and report to the court that there is no probability of an agreement on a verdict, it is the proper exercise of the power of the court to discharge them and remand the prisoner for further trial.

3. ———: ———: ———: JOURNAL ENTRY. Section 9126, Rev. St. 1913, requiring that when a jury are discharged "the reasons for such discharge shall be entered upon the journal," is met by the entry: "And the said jury in open court report to the court that they are unable to agree upon a verdict herein, and, the court being satisfied that this is true, it is by the court ordered that the said jury be, and they hereby are, excused from further consideration of this case"—supplemented by a further order during the term: "Upon discharging the jury the court was convinced that there was no possibility of their agreement, and that it would be useless to hold them longer on the case, and discharged them for that reason, and the court then so stated, and this entry is made now for then."

4. **Evidence** upon the November, 1918, trial examined, and *held* sufficient to submit the issue of guilt to the jury.

5. **Homicide:** SUFFICIENCY OF EVIDENCE. Evidence upon the present trial examined, and *held* sufficient to support the verdict.

ERROR to the district court for Lancaster county: WIL-LARD E. STEWART, JUDGE. *Affirmed.*

*R. J. Greene,* for plaintiff in error.

*Clarence A. Davis, Attorney General,* and *C. L. Dort, contra.*

DAY, J.

Arlowe D. Sutter was convicted in the district court for Lancaster county of murder in the second degree, and, following a recommendation of clemency by the jury, was sentenced to a term of ten years in the penitentiary. He brings the case here for review.

This case was before this court upon a former occasion wherein the judgment of conviction was reversed and the case remanded for further proceedings. *Sutter v. State,* 102 Neb. 321. Following the remanding of the case the defendant was placed on trial in November, 1918, and the jury, being unable to agree upon a verdict, was discharged by the court. To this action of the court the defendant duly excepted. Proceeding upon the theory that the discharge of the jury under the circumstances was in legal effect an acquittal, and that he could not again be placed upon trial for the same offense, the defendant filed a motion that he be discharged, which was overruled. Thereupon he obtained leave to withdraw his plea of not guilty, and filed a plea of *autrefois acquit,* based upon the theory that the discharge of the jury without his consent was in legal effect an acquittal. The issue raised by this plea was submitted to a jury in April, 1919, and a verdict returned adversely to the defendant's contention. Later, defendant was again placed on trial, resulting in his conviction, as stated in the outset of this opinion. By proper procedure and timely objections the defendant has preserved the question of his former jeopardy arising out of the proceedings in the November, 1918, trial, and this is the principal point discussed in the brief, as well as upon the oral argument. The record shows that at the November, 1918, trial, the case was submitted to the jury at 4:45 p. m. on November 25, and the jury were discharged on November 27, at about 4:45 p. m. It also appears that by consent of the parties the jury were permitted to discontinue their deliberations from 9:30 p. m. November 25 to 9:30 a. m. November 26; the reason for this interruption not being shown. The rest of the time, save the unavoidable inter-

ruption of sleep and meals, was occupied by the jury in their consultation. It will thus be seen that, barring the unavoidable interruptions, the jury had the case under consideration approximately 36 hours. At the expiration of this period the jury reported to the court their inability to arrive at a verdict and were discharged by the court. We do not understand the argument of defendant's counsel to go so far that there may not arise circumstances which would warrant the court in discharging the jury without arriving at a verdict, and that such a discharge would form no basis for a claim of former jeopardy. The argument is rather to the point that the circumstances of the present case did not warrant such action. The prevailing rule upon this subject is to the general effect that there must be some manifest necessity for the discharge of the jury, and to leave the courts to determine in their discretion whether under all of the circumstances of each case such necessity exists, and when such necessity exists a plea of former jeopardy will not prevail on a subsequent trial. 16 C. J. 250, sec. 394, and cases cited. In *Thompson v. United States,* 155 U. S. 271, the rule is stated as follows: "Courts of justice are invested with authority to discharge a jury from giving any verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated, and to order a trial by another jury; and a defendant is not thereby twice put in jeopardy, within the meaning of the Fifth amendment to the Constitution of the United States." *United States v. Perez,* 9 Wheat. (U. S.) 579; *Simmons v. United States,* 142 U. S. 148; *Logan v. United States,* 144 U. S. 263. In many of the states, our own included, the power to discharge the jury is specifically conferred by statute. Section 9126, Rev. St. 1913, provides:

"In case a jury shall be discharged on account of sickness of a juror, or other accident or calamity requiring their discharge, or after they have been kept so long together that there is no probability of agreeing, the court

shall, upon directing the discharge, order that the reasons for such discharge shall be entered upon the journal; and such discharge shall be without prejudice to the prosecution."

It will be noted that the court is authorized to discharge the jury "after they have been kept so long together that there is no probability of agreeing." The trial court is primarily entrusted with the duty of determining whether there is a probability of the jury reaching a verdict. This question cannot be determined arbitrarily or capriciously, but must be in the exercise of a sound judicial discretion. In *State v. Shuchardt*, 18 Neb. 454, the court had under consideration the same question now before us, and it was held:

"The authority of a judge of the district court in the trial of a criminal case to discharge the jury in the event of disagreement, without the consent of the prisoner, can only be exercised after the jury have been in consultation for so long a time that there is no reasonable probability that they will agree."

In that case the jury had been in consultation 11 hours, and it was held that the discharge of the jury under the circumstances was unwarranted, and that the prisoner was entitled to be released. In commenting on this phase of the case, it was said: "It never was intended to permit a court arbitrarily to discharge a jury for disagreement until a sufficient time had elapsed to preclude all reasonable expectation that they will ever agree. The county should not be subjected to the expenses incident to a second trial where there is a reasonable probability that a verdict may be reached on the first, while the accused is entitled as a matter of right to a verdict in his favor, if after a full and careful consideration of all the testimony, and on comparison of views, the jury should find that the charge was not established by the proof."

No hard and fast rule can be laid down as to the length of time a jury in a criminal case should be kept in consultation before they are discharged for inability to agree. Much

must be left to the circumstances of each particular case, and to the sound discretion of the trial court. The jury should be kept in consultation as long as it seems reasonably probable that they might by a full and careful consideration of the testimony and an exchange of views reach a verdict, but not so long that the verdict may be said to be the result of coercion or fatigue. The law contemplates that the verdict should be the voluntary judgment of all the jurors based upon the evidence and the instructions of the court, and unfettered by anything in the nature of coercion. *Jahnke v. State,* 68 Neb. 154. In *Russell v. State,* 66 Neb. 497, the jury were kept in consultation 89 hours, and the complaint of the accused was that the verdict was a coerced one. It was held that the length of time the jury should be kept together was largely within the discretionary power of the court.

The record shows that the court called the jury in and interrogated them as to the probability of their agreeing on a verdict; that the foreman, the usual spokesman of the panel, in the presence of the jurors stated that there was no probability of their arriving at a verdict. None of the other jurors expressed a contrary view, and it will be presumed that he expressed their conclusions, as well as his own views. This is the usual practice followed by the trial courts in the state, and is the proper procedure in an endeavor to ascertain whether anything is to be gained by keeping the jury longer in deliberation. At the time of their discharge the jury had been deliberating, including the time of necessary interruptions, as before observed, approximately 36 hours, exclusive of the 12 hours they were excused by mutual consent of the parties. They had reported to the court their inability to agree, and that there was no probability of reaching an agreement by longer consultation. Under all of the circumstances we are convinced that the action of the court in discharging the jury was the proper action to take.

But it is urged that the reasons for the discharge of the jury were not spread upon the journal as required by the

provisions of the statute above quoted; and, there being no legal justification of record for the discharge, it must therefore be an unauthorized act. The journal entry in this behalf, under date of November 27, 1918, recites, omitting the formal parts: "And the said jury in open court report to the court that they are unable to agree upon a verdict herein, and, the court being satisfied that this is true, it is by the court ordered that the said jury be and they hereby are excused from further consideration of this case. Defendant excepts." While this journal entry is not as formal and complete as is usual in this class of cases, we do not regard it necessary to pass upon the sufficiency of the entry as above outlined, for it appears that on December 20, 1918, and at the same term of court, a supplemental journal entry was entered, as follows: "On this day the defendant herein being in court with his attorney, the court states that it will make the following entry and the same is according to the facts, to-wit: Upon discharging the jury the court was convinced that there was no possibility of their agreement, and that it would be useless to hold them longer on the case, and discharged them for that reason, and the court then so stated, and this entry is made now for then. Defendant excepts and excepts to this entry."

The journal entries above quoted sufficiently state the reasons for the discharge of the jury to satisfy the requirements of the statute. As to the right of the court to amplify its journals so as to speak that which was actually done, there can be no question. While it is true the judge's notes or minutes made upon his calendar are silent as to the reasons for the discharge of the jury, it must be borne in mind that such notes or minutes are not strictly speaking parts of the record of the court. They are rather memoranda for the use of the judge and clerk in making up the record. The record when made up speaks for the court, and is the legal and authentic evidence of the proceedings of the court, and cannot in any appellate proceeding be contradicted or impeached by the entries in the trial

docket. *Morrill v. McNeill,* 1 Neb. (Unof.) 651; *Gage v. Bloomington Town Co.,* 37 Neb. 699; *Barker v. State,* 54 Neb. 53.

Defendant also complains that he has been deprived of a right to have a review of the November, 1918, trial, and that the evidence upon that trial was such that the court should have directed a verdict in his favor.

Leave was granted by this court to the defendant to file the bill of exceptions in the November, 1918, trial, and we have taken great pains to read the entire record. The evidence upon that occasion, as well as upon the last trial, is circumstantial, and is of such a character that it was clearly a proper case for the jury to pass upon. We can-not prolong this opinion by attempting a review of the testimony upon the November, 1918, trial, or upon the last trial. Suffice it to say, that after a careful examination of the records in both of the trials we are convinced that the evidence and the proper inferences therefrom presented a case for the determination of the jury.

The evidence was circumstantial. No one was present in the house at the time of the shooting except the defendant and his wife. A brother of the defendant, who was present shortly before the tragedy, testified that the defendant had the gun in his hand, and that the defendant had inquired about a "picture of a woman," and that the wife had stated that she had burned it. Certain letters indicated that the defendant had become interested in the "other woman," to the extent of some neglect, at least, of his wife. The brother left the house, and on his return, an hour later, found the dead body of the wife on the floor, the gun lying a short distance from the body. The defendant was in bed, apparently asleep, and claimed to know nothing of the shooting until awakened and told by his brother of his wife's death. It was the defendant's theory that it was a case of suicide, and some of the circumstances lend color to this theory. But, taking all of the circumstances connected with the case, we conclude that the evi-

dence upon the November, 1918, trial was sufficient to justify the court in submiting it to the jury.

We find no error which would warrant us in disturbing the judgment of the lower court.

AFFIRMED.

ALDRICH and FLANSBURG, J. J., not sitting.