97 So.2d 241 (1957)
George Lowell EVERETT, Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida.
August 14, 1957.
Rehearing Denied October 29, 1957.
*242 Cornett, Duncan & Leath, Panama City, for appellant.
Richard W. Ervin, Atty. Gen., and Reeves Bowen, Asst. Atty. Gen., for appellee.
TERRELL, Chief Justice.
Appellant, George Lowell Everett, was indicted, tried and convicted for the murder of Lou Ellen Jones. The indictment charged that the murder was committed on January 18, 1955, by choking deceased with a short length of cord. To the indictment defendant entered a plea of "not guilty," by reason of insanity at the time of the commission of the act.
Pursuant to Sections 909.17 and 917.01, Florida Statutes, F.S.A., the court appointed Doctors C.H. Denser and Irving T. Clark, eminent psychiatrists, who examined defendant as to his sanity as of the date of the murder and subsequent thereto. At a hearing held in open court on May 23, 1955, for the purpose of determining defendant's sanity as of the time of the trial, both doctors testified that defendant was mentally capable of understanding the seriousness of the charge against him, was competent to plead thereto, to assist his counsel at the trial, and that he knew right from wrong. The trial judge then entered an order that he was sane and competent to make a rational defense to the indictment. The judge by the same order limited his findings to that point, expressly stating that the question of the sanity or insanity of defendant at the time of the commission of the offense charged was a question for the jury. The cause went to trial before a jury at the conclusion of which a verdict of guilty of murder in the first degree without recommendation of mercy was rendered. A motion for new trial was denied and the court imposed the death penalty. This appeal was prosecuted from that judgment.
Appellant relies on twelve questions for reversal. Questions I and V are argued together. We understand them, when considered together, to be as follows: (1) Since *243 it was error to admit evidence tending to show that appellant killed deceased while perpetrating or attempting to perpetrate burglary or rape, the court committed error in charging the jury that if appellant killed deceased while committing or attempting to commit either of said offenses, the jury should find him guilty of murder in the first degree regardless of the existence of premeditated design; (2) that it was error to admit evidence tending to show that appellant stated the car in which he went to Panama City was unlawfully taken at Dothan, Alabama.
The indictment charged that the murder was committed "from a premeditated design to effect death" of deceased. This court has many times held that such a charge is proven by showing (1) that the murder was committed with a premeditated design or (2) that it was done while perpetrating or attempting to perpetrate burglary, robbery or rape, or any of the other felonies set forth in Section 782.04, Florida Statutes, F.S.A. Sloan v. State, 70 Fla. 163, 69 So. 871; Sutton v. State, 84 Fla. 98, 92 So. 808; Pope v. State, 84 Fla. 428, 94 So. 865; Southworth v. State, 98 Fla. 1184, 125 So. 345.
The automobile used by appellant belonged to C.E. Sloop, Jr., with whom appellant lived and with whom he was in custody as a parolee, result of having been convicted of crime in Federal Court. Sloop testified that appellant had the car without his consent at the time he murdered deceased. Even though this testimony was stricken, appellant's confession, admitted over objection, showed that he [appellant] took the keys to the car from Sloop's home, took the car from Dothan and went to Panama City. After the murder was committed appellant proceeded to Mobile, Alabama, where he left the car, wrote Sloop and told him where to find it. Both questions are without merit.
Regardless of what this evidence shows, there was no error committed in admitting it. Since viewing the evidence in sum, in the effort to establish appellant's insanity, it was proven by different witnesses that he was an avowed thief, that he had repeatedly stolen bicycles, automobiles, watches, money and other articles, that he had thrice been committed to the Georgia Correctional Training School, that he served a sentence in a federal reformatory for stealing and that when he murdered deceased he was paroled to Mr. Sloop, having been convicted at Montgomery, Alabama, for stealing an automobile.
Since appellant's plea to the indictment was "not guilty" by reason of insanity when he committed the crime, he now contends that such a plea eliminated all issues except that of insanity and removed the right of the state to prove the murder, the burglary or the rape. He says, in other words, that the defense of insanity places in issue the one question of whether or not defendant was sane at the time he committed the murder and being so, the state was precluded from proving the burglary or the rape.
In response to this contention it is sufficient to point out that under Section 909.02, Florida Statutes, F.S.A., all pleas to an indictment or information are abolished except nolo contendere and guilty or not guilty. In view of this statute when appellant pleaded "not guilty" by reason of insanity at the time of the commission of the crime as a matter of law he pleaded "not guilty" and gave notice as required by Section 909.17, Florida Statutes, F.S.A., that he intended to rely upon the defense of insanity. It appears from the record that at all times during the trial appellant conceded that the state had the burden of proving his guilt. It does not appear that appellant objected to any evidence offered by the state on the theory that it was devoid of power to prove the murder or any incidence of it. The court instructed the jury, without objection on the part of appellant, that under the plea of "not guilty" the burden was on the state to prove the guilt of defendant including every material element of the crime beyond a reasonable doubt. Having witnessed this *244 procedure from start to finish of the trial without objection appellant is not now in position to contend that the state was devoid of right or power to prove the murder, the burglary or the rape. The burden of proving insanity was on appellant. If his contention as to procedure had been followed, the state would have had nothing to prove. It is our view that appellant's plea placed in issue every material allegation of the indictment, that the state carried the burden of proving the elements of murder in the first degree and that it was committed in the perpetration or during the attempt to perpetrate rape, burglary or any offense condemned by Section 782.04, Florida Statutes, F.S.A.
Since Points II and III were submitted together by appellant, we will dispose of them in the same manner. By Point II it is contended that the trial court, on cross-examination, prejudicially restricted the evidence of Court appointed medical experts. He says that the rulings of the trial court confined counsel to facts literally in evidence and that such procedure unnecessarily impaired the full exposition of the value and correctness of the expert witness opinion.
We have examined this contention, including the rules governing the cross-examination of expert and other witnesses and find no merit whatever to the contention. The evidence relied on was that of Dr. Denser, a psychiatrist; he was put through a long and exacting cross-examination by appellant covering more than one hundred pages, a careful reading of which fails to show that the trial court abused his discretion. As to Point III we have examined that carefully and while we find no merit to it, it is not explored by appellant and may therefore be considered as abandoned.
The fourth question charges error of the trial court in prohibiting defense counsel from drawing reasonable deductions from the evidence, elicited on cross-examination from psychiatrists appointed by the court, which developed the theory that defendant was a psychopath.
The thory on which the question was based was that some recognized psychiatrists hold that a psychopath is an insane person, and that where experts in the field disagree such deductions should be drawn by the jury. The record does not show that the trial court prohibited defense counsel from drawing reasonable deductions from the evidence elicited on cross-examination. The psychiatrists were Dr. Denser and Dr. Clark and their evidence does not show that defendant drew or attempted to draw any deductions from it. Much of the evidence shows an attempt to get Dr. Denser or Dr. Clark to say what Dr. Cleckley would testify to as to appellant's sanity if he were present, but all such testimony was properly stricken. There is no showing that Dr. Cleckley's book was standard authority but if it had been so shown, it could not have been read in evidence to contradict other witnesses of equal standing. Neither Denser nor Clark could testify as to what Cleckley's book would show or what he would testify as to appellant's sanity.
It is next contended that the charge of the court unduly emphasized the theory that the jury could find appellant guilty of murder in the first degree without reference to premeditation if the murder was committed while appellant was engaged in the perpetration of rape, robbery or burglary.
It is true that when murder is committed in the perpetration of rape, robbery or burglary, premeditation is unimportant and does not have to be shown. To support his contention appellant relies on instructions 6, 11, 41 and 42 as revealed by the record but it is not shown that he objected on the theory here presented or on any theory prior to retirement of the jury. Section 918.10(4), Florida Statutes, F.S.A. It is clear from the record that the question here presented was not called to the attention of the trial court or ruled *245 on by him at any time and being so it will not be considered on appeal. Daly v. State, 67 Fla. 1, 64 So. 358; Dewey v. State, 135 Fla. 443, 186 So. 224; Dukes v. State, 148 Fla. 109, 3 So.2d 754.
The seventh question has to do with whether or not defendant was entitled to have the jury charged that they were at liberty to accept the opinion of non-expert witnesses in preference to that of expert witnesses if they elected to do so.
We have examined the charges given and those requested but we do not find that any such charge as contended for was requested. It necessarily follows that not having been requested appellant cannot complain that the charge was not given. Brunke v. State, 160 Fla. 43, 33 So.2d 226; Foreman v. State, Fla., 47 So.2d 308. It does not further appear that complaint of failure to give such a charge was made in motion for new trial, nor did any assignment of error raise the point. Aside from this we have examined the charges given and we think they fully advised the jury that it was within their province to elect to believe the evidence of the expert or the non-expert witnesses.
The eighth question charges that the trial court erred in his refusal to give charges 5 and 6 of defendant, the substance of which was that his mental condition could be considered by the jury in arriving at the determination of whether or not he was capable of forming a premeditated design even though he was not found to be insane.
Much that was said in answer to the previous question might be said in answer to this question. It is also pertinent to point out that much of appellant's contention is not relevant to this question because the record shows that the murder was committed in the perpetration or the attempt to perpetrate burglary, robbery and rape. It was accordingly unnecessary to show or consider premeditation. We are also convinced that the charges given by the court covered such portions of the requested charges as were proper to give.
The jury were charged that the legal presumption of innocence should shield defendant from punishment unless it be clearly shown that he had sufficient reason to form a guilty intent. The jury were also told that when the defense of insanity was interposed the real test is whether defendant had sufficient use of his faculties to understand the nature of the act with which he is charged. It is settled law that conviction of a lower degree of crime cannot be secured for the reason that defendant's mind was so unsound as to render him incapable of deliberation if he knew the nature of his act. Wharton on Homicide, 3rd Ed., 803, Section 539.
Another reason requested charges 5 and 6 shoud not have been given was that we find no evidence to justify the conclusion that if appellant was sane he lacked sufficient mentality to form a premeditated design, neither did the evidence show that he lacked capacity to form and execute an intent to commit murder. Since the evidence shows that defendant deliberately broke into deceased's home, committed burglary, robbery and rape, absent any showing that he labored under mental disorder or insane delusion that would prevent him forming and executing premeditation to murder, prejudicial error was not shown.
The test confronting the jury was whether or not defendant's alleged mental aberration was such as prevented him from distinguishing right from wrong, did he know that he was doing wrong when he slew his victim? This question was squarely presented and the jury said yes. In the old days before we knew there were degrees of insanity, when one went berserk, regardless of the degree of his insanity, he was said to have "bats in the belfry"; the phrase comprehended every aspect of mental illness. We know better *246 now. For instance we are told that when King David was waging war with the Philistines, he used only a few of his select men. A well of water in Bethlehem was in the hands of the enemy. David suffered from thirst and yearned audibly for a drink from that well. Three of his men stole through the enemy lines, took water from the well and brought it to the king but he was loath to drink, even to sip it and piously poured it on the ground as a sacrifice saying, "Shall I drink the blood of men that went in jeopardy of their lives?" Some writers have pronounced the exhibition of such human quality as the moral constitution. Rules of law, as well as legislation, are sometimes predicated on kindred patterns of behavior. They doubtless furnish the ideal for democratic society to aspire to but defendant like most humans was far from being possessed of such a moral constitution, likewise the test for determining his competency did not exact so much. He knew to flee from the scene of the crime promptly, he abandoned Sloop's car and advised him where to find it; in fact the weight of the evidence shows that he was sane. It is possibly a case of depravity rather than one of insanity. Where the dividing line between them is we do not know. It may be that the law has not developed the proper technique for dealing with them but such as we have, no body of men is better qualified to cope with them than a carefully selected jury so we find no error.
The tenth question charges error in refusal of the court to grant a new trial on the ground that Henry C. Corbin was disqualified to sit as a juror in this cause to try defendant because he was at the time under indictment for grand larceny.
It is shown that Corbin was on November 13, 1935, convicted of grand larceny in the Circuit Court of Washington County and sentenced to serve six months in the county jail. On appeal to the Supreme Court his conviction was on October 14, 1937, reversed. It was also shown that no further steps had been taken in the cause, that Corbin's case had not since been carried on any active court docket, that an information was filed but that no information or indictment in the cause could be found in the clerk's office. Corbin testified that he went back to court several times after his case was reversed but that it had never been tried again, in view of which it could hardly be said that Corbin was under prosecution as contemplated by Section 40.07, Florida Statutes, F.S.A., at the time he qualified and sat as a juror in the case at bar, since the prosecution against him had been dropped for almost twenty years. Likens v. State, 153 Fla. 887, 16 So.2d 158; Ex parte Sullivan, 155 Fla. 111, 19 So.2d 611.
Questions XI and XII charge that the trial court committed error in refusing a new trial on the ground (1) that the verdict was contrary to the weight of the evidence; (2) the juror Henry C. Corbin was a judicially declared incompetent during the trial and has never had his sanity judicially restored.
There is no merit whatever to either of these questions. Both psychiatrists testified that in their opinions the defendant, on the day he committed the crime, knew the difference between right and wrong, that he was mentally competent of knowing his acts were contrary to law, and that he was not insane at the time. It was the province of the jury to weigh all the testimony. The evidence amply supports the verdict. This court has constantly adhered to the "right or wrong" test with regard to sanity. Davis v. State, 44 Fla. 32, 32 So. 822; Brock v. State, Fla. 1954, 69 So.2d 344; Warner v. State, Fla. 1955, 84 So.2d 314.
As to Corbin's sanity it is shown that on October 10, 1930, he was committed to the Florida State Hospital because of insanity. It is true that when *247 one is adjudged insane the presumption continues that he remains so until that presumption is removed by proof. The presumption of Corbin's insanity was completely overcome by conclusive proof. It further appears that Corbin's adjudication of insanity was a matter of record but that it was never inquired into by appellant. We think he waived his right to do so on motion for new trial. Ex parte Sullivan, supra; Section 913.04, Florida Statutes, F.S.A., and Durham v. State, 182 Tenn. 425, 188 S.W.2d 555, 160 A.L.R. 746.
Other questions raised have been considered and are found to be without merit.
The judgment appealed from is therefore affirmed.
Affirmed.
HOBSON, ROBERTS, DREW, THORNAL and O'CONNELL, JJ., concur.
THOMAS, J., not participating.