475 So.2d 1027 (1985)
Beverly WARREN, Appellant,
v.
STATE of Florida, Appellee.
No. BC-485.
District Court of Appeal of Florida, First District.
September 27, 1985.
Michael E. Allen, Public Defender, and David A. Davis, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and John M. Koenig, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
Appellant was charged by indictment with one count of first degree murder and two counts of child abuse. She was convicted by a jury of the lesser included offense of aggravated battery, but was found guilty as charged of the child abuse counts. Appellant contends that the trial judge erred in denying her motions for judgment of acquittal on all counts. Appellant also contends that the trial judge reversibly erred in denying her pretrial motion to sever one of the child abuse counts from the remaining counts of the indictment. Finding that no reversible error has been shown, we affirm.
*1028 The indictment returned below charged that appellant and her husband, Paul Warren, caused the death of their four-month old daughter, Contessa, sometime between 12:00 midnight and 4:20 A.M. on the morning of October 24, 1983. The indictment also charged the Warrens with willfully, or with culpable negligence, denying Contessa necessary medical treatment the day Contessa was discovered dead, October 24, 1983, and with child abuse in allowing their son William to be severely bruised on his head on October 20, 1983.[1] Prior to trial, appellant filed a motion to sever the child abuse offense relating to William from the trial on the other two counts relating to Contessa. This motion was denied. The trial judge did grant in part appellant's motion for judgment of acquittal as to the first degree murder count, based on the court's finding that insufficient evidence was presented at trial on the issue of premeditation. The homicide charge was submitted to the jury on a charge of second degree murder.
The testimony at trial disclosed that appellant found Contessa dead in her crib at approximately 4:20 A.M. the morning of October 24, 1983. An autopsy performed the same day by Dr. Peter Lipkovic revealed bruises of varying colors covering a large portion of the right side of Contessa's head. Dr. Lipkovic testified that Contessa died from a brain hemorrhage caused by an accumulation of blood between her dura membrane and brain, a condition known as subdural hematoma. Dr. Lipkovic opined that the cause of Contessa's subdural hematoma was the same as for the bruises along her face; that is, an open-handed blow of moderate force. Dr. Lipkovic further opined that the time of Contessa's death was somewhere between 12:00 midnight and 4:20 A.M. on October 24, 1983.
Expert testimony relating to William was provided by Dr. Mark Steinberg, who examined William on October 24, 1983, in conjunction with an investigation of alleged child abuse by the Warrens begun by the state attorney's office after Contessa was discovered dead. Dr. Steinberg found that William suffered from large bruises on his left cheek, two black eyes, a small hemorrhage of the white part of his left eye, and severe diaper rash, as well as older healing bruises on both elbows. Dr. Steinberg opined that William's facial bruises were three to five days old, and that they had been caused by an open-handed blow by an adult.
Appellant's theory of defense at trial was that the injuries of Contessa and William were caused by a third child, Anthony, who was two-and-one-half years old at the time of the incident in question, October 20, 1983. According to appellant, on that day she heard a loud noise in the younger children's bedroom while they were in her custodial care (no other adults were present at this time), appellant having previously placed Contessa and William on a bed supported by cinder blocks. Appellant testified that she discovered the bed knocked off its cinder block support, William lying sprawled on the floor and Anthony standing over Contessa with a toy truck in his hand.[2] Appellant theorized that Anthony had pulled William from the bed, and had hit Contessa with the toy truck.
However, a number of witnesses testified below that they noticed no bruises on either child's face until two days after appellant discovered Anthony in the other children's bedroom. Linda Davis, a visitor to the Warren residence on October 20, testified that she observed no bruises on the faces of either William or Contessa on that date. This testimony was corroborated as to Contessa by Lila Williams, an employee of the Lafayette County Health Center who saw both appellant and Contessa at the health center on October 21. On the other hand, both Mr. and Mrs. James *1029 Warren, appellant's father and mother-in-law, testified that they noticed "minor bruises" on Contessa and William on October 22, 1983.
James Warren also testified that both children were "lively and playful" on Sunday, October 23, the evening prior to the date of Contessa's death. This testimony contrasted with the testimony of Dr. Lipkovic that, in his opinion, Contessa could not have suffered subdural hematoma on October 20 and continued to behave normally on the evening prior to her death. Dr. Lipkovic explained that the region of the brain where Contessa received her injuries has a high concentration of motor functions relating to the opposite side of the body. Accordingly, Dr. Lipkovic testified, he would have expected Contessa's injury on the right side of her skull to have impacted on her ability to control the left side of her body. Appellant's expert witness, Dr. Joseph Burton, agreed with Dr. Lipkovic that, based on the severity of the blow causing Contessa's injuries, visible changes in Contessa's left-side reactions should have been noticed within a few hours after Contessa received the fatal blow. Testifying with specific regard to appellant's theory that Anthony caused the injuries to the children for which appellant was charged, Dr. Lipkovic opined that he could exclude the toy truck as the source of Contessa's injuries, both because of the nature of the injuries as compared to the physical configuration of the truck and because a two-and-one-half year old child could not generate the force necessary to strike the open-handed blow that caused these injuries.[3] Likewise, Dr. Steinberg testified that, in his opinion, William could not have received his injuries from being pushed out of bed by Anthony but, rather, was injured by two separate, open-handed blows.
Appellant also presented testimony below from which she raises in this court the alternative theory that her husband, Paul, was the person who caused the injuries to Contessa and William.[4] She testified that on the evening prior to Contessa's death, October 23, the Warren family visited Mr. and Mrs. James Warren, leaving around midnight. Appellant testified that she placed Contessa and William in bed after the family arrived home at approximately 12:15 A.M., and proceeded to her bedroom across the hall, where her husband was already in bed asleep. Appellant admitted to being awakened around 3:00 A.M. that night, allegedly by a family cat crawling in through a kitchen window. Appellant denied hearing her husband rise anytime during the night, and also denied hearing any crying or other noise in the children's bedroom. Instead, appellant testified, she was awakened at 4:20 A.M. by a co-worker of her husband, who asked her to wake her husband up for work. Appellant testified that she went to the children's room to check them prior to awaking her husband, and found Contessa dead at this time. Appellant's husband did not testify at the trial below.
Appellant first contends on appeal that the circumstantial evidence adduced was insufficient to support her convictions for aggravated battery and child abuse of Contessa, or child abuse of William. She points out that where, as here, the evidence of guilt is entirely circumstantial, the evidence must exclude every reasonable hypothesis of innocence. Heiney v. State, 447 So.2d 210 (Fla. 1984); Lowery v. State, 450 So.2d 587 (Fla. 1st DCA 1984). Here, appellant maintains, the only evidence linking her to the crimes was her proximity to the scene of the crimes, which is legally insufficient to support a conviction, Gains *1030 v. State, 417 So.2d 719 (Fla. 1st DCA 1982), pet. for rev. den., 426 So.2d 26 (Fla. 1983), and which does not exclude the reasonable hypothesis that her husband, Paul Warren, was the children's assailant. We find appellant's claim to be without merit.
Where, as here, a criminal defendant moves for a judgment of acquittal in a case based entirely on circumstantial evidence, the trial court is required to determine whether the evidence would support a jury's conclusion that all reasonable hypotheses of innocence have been excluded. Grant v. State, 474 So.2d 259, 260 (Fla. 1st DCA 1985); Kresbach v. State, 462 So.2d 62, 64 (Fla. 1st DCA 1984). That is, the test to be applied in reviewing a denial of a motion for judgment of acquittal is not whether, in the opinion of the trial court or appellate court, the evidence fails to exclude every reasonable hypothesis but that of guilt but, rather, whether the jury might reasonably so conclude. Maisler v. State, 425 So.2d 107 (Fla. 1st DCA 1982), pet. for rev. den., 434 So.2d 888 (Fla. 1983).
In the case at bar, we have little difficulty concluding that competent, substantial evidence supports the jury's conclusion that the evidence excluded all reasonable hypotheses of appellant's innocence. The medical evidence clearly points to injuries to both children by a blow or blows inflicted by an adult. As to appellant's hypothesis that her child Anthony injured Contessa and William, this theory was not argued in this court, and may accordingly be deemed waived.[5] Appellant's brief concedes that "one of the two parents probably committed these crimes... ." Nor do we find persuasive appellant's argument that the evidence failed to exclude the hypothesis that her husband was the children's assailant. Appellant's reliance on cases such as Gains holding that mere proximity to the scene of a crime is insufficient to support a conviction is misplaced, since the evidence establishes more than appellant's mere proximity to these crimes. Indeed, the evidence would permit a jury to find that appellant maintained close supervision and custodial care over the children at all times relevant to this case, and that appellant was the only adult present at those times in which the children were injured, except during the early morning hours of October 24, when the evidence establishes that Contessa died. This circumstance, together with the testimony regarding the severity of injuries received by Contessa and William, as well as the lack of evidence indicating that appellant's husband, Paul, had previously been abusive towards the children (or had been constantly supervising the children), and the absence of a reasonable explanation regarding how Contessa and William received their injuries while admittedly in appellant's care, amounts to more than appellant's "mere proximity" to the crime scene. That being so, a jury question was presented as to the reasonableness of appellant's hypothesis of innocence that appellant's husband killed Contessa during the early morning hours of October 24, 1983, at a time when appellant was continuously present, in the same house, without appellant's knowledge. Accordingly, we hold that, under all the facts and circumstances of this case, a jury could find that appellant's hypothesis of innocence was not reasonable. Dewey v. State, 186 So. 224, 135 Fla. 443 (Fla. 1938); Pittman v. State, 360 So.2d 1138 (Fla. 1st DCA 1978); Guthrie v. State, 407 So.2d 357 (Fla. 5th DCA 1981); Cf., Bradford v. State, 460 So.2d 926 (Fla. 2d DCA 1984).
We also find without merit appellant's assertion the trial judge erred in failing to grant her motion to sever the child abuse count concerning William from the remaining counts of the indictment concerning Contessa. Florida Rule of Criminal Procedure 3.151 allows the joinder of two or more offenses in the same indictment or information where the offenses are *1031 based on the same, or connected, acts or transactions. In determining whether two or more acts or transactions are connected, the reviewing court must consider the temporal and geographic association of the offenses, the nature of the offenses, and the manner in which they were committed. Bundy v. State, 455 So.2d 330, 345 (Fla. 1984). We find here that the separate child abuse incidents involving Contessa and William are reasonably considered connected together as part of one on-going pattern, involving one household, the same family members, a short time frame, and the same adult, primary custodial supervisor of the children at the time of their injuries. Mayberry v. State, 430 So.2d 908 (Fla. 3d DCA 1982); see also, Williams v. State, 409 So.2d 253 (Fla. 4th DCA 1982), pet. for rev. den., 417 So.2d 331 (Fla. 1982) (separate drug transactions, consummated within six days, involving same participants, connected in episodic sense for purposes of Rule 3.151).[6] Therefore, we find that the trial court did not abuse its discretion in denying appellant's motion to sever. Johnson v. State, 438 So.2d 774, 778 (Fla. 1983).
AFFIRMED.
MILLS and THOMPSON, JJ., concur.
NOTES
[1] Appellant's pre-trial motion to sever her trial from the trial of Paul was granted.
[2] Appellant admitted awareness of the unstable support provided for the children's bed by the cinder blocks, and that she likewise was aware that Anthony had toppled the bed, with the other children in it, on prior occasions.
[3] Although Dr. Burton testified that his examination of Contessa indicated that she received her bruises two to three days prior to her death, he did agree with Dr. Lipkovic that the bruises, as well as Contessa's eventual death, were caused by an open-handed blow by an adult, and not from a blow with a toy truck by Anthony.
[4] It is unclear from the record whether appellant's counsel argued this hypothesis of innocence before the jury, since final arguments of counsel were not transcribed. However, counsel did argue this theory to the court as an alternative basis for appellant's motion for judgment of acquittal.
[5] Even had appellant pressed that theory before this court, we find the evidence adduced below sufficient to support the jury's implicit rejection of this defense. See, Bouler v. State, 389 So.2d 1197 (Fla. 5th DCA 1980) (reasonableness of suggested hypothesis innocence is for a jury to weigh).
[6] In light of our disposition of this issue, we do not address the state's contention that, even had the offenses not been connected transactions, failure to sever would not have been erroneous since, the state contends, the evidence of each count would have been admissible in separate trials under the Williams rule as similar fact evidence. Bundy, supra, at 345; see also, Harris v. State, 414 So.2d 557 (Fla. 3d DCA 1982).