W. SHARP, Judge.
Brenda Snyder and her husband, Gerald Snyder, appeal from convictions and sentences imposed for aggravated child abuse.[1] The trial court departed above the sentencing guidelines, giving written rea•sons, sentencing each of the appellants to 15 years in prison on one count followed by 10 years of probation on each of two additional counts, the terms of probation to run concurrently. The permitted guidelines range was 2V2 to 5V2 years of incarceration.
The appellants raise four issues on appeal: (1) that section 827.03, Florida Statutes (1987) is unconstitutional; (2) that the trial court erred in consolidating for trial offenses which occurred on two different dates; (3) that it erred by not granting the appellants’ motion for judgments of acquittal; and (4) that the court departed beyond the guidelines for impermissible reasons. We find no merit in the first three points, but we agree the trial court departed for legally insufficient reasons. Accordingly, we affirm the convictions but vacate the sentences and remand for resentencing.
Evidence at trial established the appellants were given custody of Robbie Wilkerson, a fourteen year old boy, by Robbie’s aunt. After living with the Snyders for at least several months, Robbie ran away and returned to his aunt’s house, saying that he had been abused. A deputy sheriff observed bruises on Robbie’s body. Photographs of the boy’s severely bruised buttocks, upper legs, and arm were placed in evidence.
While living with the appellants, Robbie was housed at various times in a one-room cottage behind the appellants’ mobile home, in a van which did not run, and, for about two months, in a shed made from a horse stall. The latter had no electricity and, apparently, no plumbing. Robbie testified he was handcuffed to the window of the horse stall during the three nights before he escaped, and that when handcuffed he was unable to roll over or go to the bathroom or get a drink of water. Brenda Snyder said the boy was handcuffed because he had threatened to harm the appellants, to burn the house down, and to commit suicide.
Robbie also complained of being spanked, and although the appellants denied knowing anything about the bruises, they told the investigating deputy that they had disciplined Robbie with a wooden paddle, a small dowel used for a balloon, and a plastic baseball bat. The appellants gave the deputy a videotape made in March, 1989, which shows their niece, a young adult woman, hitting Robbie repeatedly with a plastic baseball bat of regulation size while she interrogates him about some missing candy and about letters he wrote to a girl at his school. On the tape, the appellants laugh appreciatively, urge the niece on, advise her how to make the blows more effective by hitting the boy’s toes, and tell her to twist Robbie’s ear to stop him from holding on to the bat. Although Robbie laughs from time to time during the episode, it is obvious that a number of the blows were painful.
A second videotape, obtained by search warrant, had been made by Brenda Snyder in December 1988. According to Gerald Snyder, the videotape was made in order to protect the appellants against any claim of child abuse. The tape shows Gerald Snyder punishing Robbie for writing obscene letters to a girl at school by paddling him forcefully on his bare buttocks with a *195 wooden paddle which apparently broke in the process. While videotaping the episode, Brenda Snyder made sure that the boy’s buttocks were toward the camera, and she taunted her husband for not hurting Robbie enough, as if trying to provoke him into administering more blows.
Robbie testified that he was paddled frequently for the least little thing, that Brenda Snyder hit him with the bat between March 27th and 30th, 1989, and that the bruises shown in the still photographs came from Brenda hitting him with the bat. It could reasonably be inferred from the evidence that the most severe beatings were not videotaped. In general, the appellants did not so much contradict the evidence presented by the prosecution at trial as play down the severity of their treatment of Robbie, claim that it had been justified by Robbie’s behavior, and assert that their intentions had been good.
We now turn to the issues raised by the appellants. The Florida Supreme Court has held that the pre-1984 Florida aggravated child abuse statute, section 827.03, is constitutional. Mahaun v. State, 377 So.2d 1158 (Fla.1979); State v. Gaylord, 356 So.2d 313 (Fla.1978); Faust v. State, 354 So.2d 866 (Fla.1978). The amendment to section 827.03 in 1984 merely clarified that one or more of the listed acts constitutes “aggravated child abuse” and did nothing to undermine the supreme court opinions which had held the law to be constitutional.
The trial court did not abuse its discretion by consolidating for trial the offenses of December 1988 with those of March 1989.[2] See, e.g., Ashley v. State, 265 So.2d 685 (Fla.1972). The appellants have shown no prejudice as a result of the consolidation, which complied with Florida Rule of Criminal Procedure 3.151 because the offenses, although separated by about three months, were similar and based on connected acts. The same victim and both appellants were involved in both episodes, all purported to be punishments of a child, and all occurred while the victim was living with the appellants. In determining whether two or more acts or transactions are connected, the reviewing court must consider not only the temporal association of the offenses, but also their geographic association, their nature, and the manner in which they were committed. Bundy v. State, 455 So.2d 330, 345 (Fla.1984). See also Warren v. State, 475 So.2d 1027 (Fla. 1st DCA 1985) and Meadows v. State, 534 So.2d 1233 (Fla. 4th DCA 1988).
We hold the trial court did not err by denying the appellants’ motion for judgments of acquittal. The evidence was sufficient to send the case to the jury. By moving for judgments of acquittal, the defendants admit not only the facts and evidence adduced, but also every conclusion favorable to the State that a jury might reasonably infer from the evidence. The trial court should not grant the motion unless the evidence is such that no view which the jury may lawfully take of it favorable to the State can be sustained under the law. Herman v. State, 472 So.2d 770 (Fla. 5th DCA 1985), rev. denied, 482 So.2d 348 (Fla.1986). In upholding the trial court on this point we have taken into account section 777.011, Florida Statutes (1987), which provides:
777.011 Principal in first degree.— Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he is or is not actually or constructively present at the commission of such offense.
The meritorious issue raised by the appellants concerns the insufficiency of the trial court’s reasons for departing upwardly from the sentencing guidelines. Those written reasons may be summarized as follows: the appellants’ use of corporal pun *196 ishment must be viewed in light of their knowledge that they were dealing with an emotionally disturbed child, and that they had refused to accept counseling services; the appellants obviously enjoyed the videotaped incidents, which otherwise may have been described as a spanking and a mock trial; Robbie was instructed to pull down his pants to be paddled in the presence of the appellants’ sixteen year old daughter; Brenda Snyder asked her husband to put Robbie’s head toward the kitchen so she could have a better angle for filming that paddling; Gerald Snyder used extreme profanity while chastising the boy for writing obscene letters; the appellants encouraged their niece to hit the boy repeatedly with a plastic baseball bat and to twist his ear, while Brenda Snyder remarked that he loved being beat; the niece was encouraged to hit Robbie’s toes; Gerald Snyder laughed during the plastic bat episode, and it was clear that Robbie was an object to satisfy the sadistic impulses of the appellants; the videotaped punishments were made a family affair, a spectator sport.
We hold that the reasons for departure were insufficient primarily because the factors relied upon by the trial court are subsumed in the criminal offense itself. Reasons for departure may not duplicate an inherent component of the crime. To base departure on such reasons would sanction an arbitrary and case-by-case sentencing based on identical acts and thus frustrate the sentencing guidelines purpose. McGouirk v. State, 493 So.2d 1016 (Fla.1986). See also State v. Rousseau, 509 So.2d 281 (Fla.1987).
Section 827.03, Florida Statutes (1987), defines aggravated child abuse in terms of willful torture or caging, or malicious punishment, or the commission of aggravated battery. The latter involves use of a deadly weapon, or the intentional or knowing causing of great bodily harm, permanent disability, or permanent disfigurement in the commission of a battery.[3]
The supreme court indicated in Vanover v. State, 498 So.2d 899 (Fla.1986), that because Florida Rule of Criminal Procedure 3.701(b)(3) allows departure based on “the circumstances surrounding the offense,” upward departure may be justified where a crime is a highly extraordinary and extreme incident of its kind. We have reviewed the videotapes and the other evidence and find no excesses or extremes beyond those needed to convict the appellants of aggravated child abuse. Thus, we find that such extreme circumstances do not exist in this case.
To the extent that the trial courts written reasons imply that the appellants’ motives justified departure, there was error. Mere bad motive of the perpetrator (such as could be inferred, for example, from enjoyment of a child’s punishment) is not a basis for upward departure from the sentencing guidelines in an aggravated child abuse case because improper motive is inherent in the offense itself, as shown by the wording of the statute, and is not an extraordinary or egregious circumstance. Only where, as in Stewart v. State, 489 So.2d 176 (Fla. 1st DCA 1986), there is a vicious intent to inflict harm of a particularly outrageous nature, and to subject a child to extreme agony, pain, and terror, would the offender’s motive go beyond the compass of the criminal scienter involved in the aggravated child abuse statute and justify departure from the sentencing guidelines. But the abuse in the instant case does not even begin to compare to the horrors of Stewart.
We affirm the appellants’ convictions but hold that the trial court erred in sentencing the appellants to terms beyond the maximum allowed by the guidelines. We therefore vacate the sentences of both the appellants and remand for resentencing within the guidelines.
SENTENCES VACATED and CAUSE REMANDED.
DANIEL, C.J., and COWART, J., concur.

. Brenda Snyder was found guilty of violating sections 827.03(l)(c), 827.03(2) and 827.03(3), Fla.Stat. (1987); Gerald Snyder was found guilty of violating sections 827.03(l)(c) and 827.-03(l)(d), Fla.Stat. (1987).

. The appellants do not argue that the trial court erred in putting them on trial together rather than individually.

. § 784.045, Fla.Stat. (1987).