538 So.2d 820 (1989)
Adam Blaine CHESTNUT, Petitioner,
v.
STATE of Florida, Respondent.
No. 70628.
Supreme Court of Florida.
January 5, 1989.
Rehearing Denied March 22, 1989.
Michael E. Allen, Public Defender and Paula A. Saunders, Asst. Public Defender, Tallahassee, for petitioner.
Robert A. Butterworth, Atty. Gen. and Royall P. Terry, Jr., Asst. Atty. Gen., Tallahassee, for respondent.
GRIMES, Justice.
This is a petition to review the First District Court of Appeal's decision in Chestnut v. State, 505 So.2d 1352 (Fla. 1st DCA 1987), which held that evidence of diminished mental capacity was inadmissible to negate the specific intent required to convict of first-degree premeditated murder. The district court certified the following question as one of great public importance:
Is evidence of an abnormal mental condition not constituting legal insanity admissible for the purpose of proving either that the accused could not or did not entertain the specific intent or state of mind essential to proof of the offense, in order to determine whether the crime charged, or a lesser degree thereof, was in fact committed?
Id. at 1356. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the question in the negative.
Chestnut and two codefendants, Jackie Bolesta and Gary German, robbed and killed the victim, Carl Brown, as the result of a robbery/murder scheme. German, the state's chief witness, was granted immunity and testified that Bolesta and Chestnut planned to rob and kill Brown on a trip to look at horses ostensibly being offered to Brown for sale. He testified that Bolesta demanded the victim's money while Chestnut held an axe handle over the victim and then struck him across the forehead. German further testified that Bolesta, armed with a machete, and Chestnut then took the victim "down the road." After the victim was killed, German and Chestnut hid the body in the woods. Chestnut was charged with both first-degree premeditated murder and felony murder.
In a statement to police officers, Chestnut admitted he was aware that Bolesta *821 planned to rob the victim but denied any knowledge of a planned murder. Further, Chestnut claimed that Bolesta hit the victim in the head with the axe handle, robbed him, and murdered him. Chestnut admitted he concealed the body at Bolesta's order.
The state filed a pretrial motion seeking to prohibit anticipated testimony by defense witnesses who would present evidence concerning appellant's mental condition below that standard recognized by the M'Naghten rule. The trial court granted the state's motion finding that "`absent an insanity plea, expert testimony as to mental status, especially when offered to bolster an affirmative defense would be improper in and of itself since it would only tend to confuse the jury.'" 505 So.2d at 1353.
At trial, counsel proffered expert testimony seeking to establish that Chestnut did not have the mental state required for premeditated first-degree murder. The proffered testimony revealed that Chestnut's intelligence was in the lowest five percent of the general population. Further, it showed that, several years earlier, appellant was kicked in the head by a bull, sustaining a fractured skull and brain damage which caused a posttraumatic seizure disorder that required medication. Chestnut also proffered evidence that he has diminished mental capacity with moderate impairment of verbal memory and has a passive personality which causes him to avoid physical confrontation; as a result, he is easily led and manipulated.
At the instruction conference, the trial court denied appellant's request for a special verdict form that would separate premeditated murder from felony murder. Chestnut was convicted of first-degree murder and sentenced to life imprisonment without parole for twenty-five years, the state declining to seek the death penalty.
The trial court's ruling was consistent with many previous Florida decisions. In Ezzell v. State, 88 So.2d 280 (Fla. 1956), the defendant sought to introduce testimony which intended to show that he had a psychopathic personality so severe that it would prove he lacked the specific intent to commit first-degree premeditated murder. The defendant had previously withdrawn his insanity plea. In approving the rejecting of this evidence, we held: "Since the plea of insanity was out and there was no defense based on mental defects less than insanity, there was no reason for ... testimony or to labor the question." Id. at 282. We reached the same conclusion in Everett v. State, 97 So.2d 241 (Fla. 1957), cert. denied, 355 U.S. 941, 78 S.Ct. 432, 2 L.Ed.2d 422 (1958). There, the defendant had pled not guilty by reason of insanity to a charge of first-degree murder. On appeal, this Court rejected the contention that the trial court erred in refusing to give an instruction that the defendant's mental condition could be considered by the jury in deciding whether he was capable of forming a premeditated design even though he was not found insane.
Similarly, in Tremain v. State, 336 So.2d 705, 706 (Fla. 4th DCA 1976), cert. denied, 348 So.2d 954 (Fla. 1977), the Fourth District Court of Appeal addressed the issue of "whether testimony regarding the mental state of a defendant in a criminal case is admissible in the absence of a plea of not guilty by reason of insanity." That court answered the question in the negative and said:
It is our opinion that to allow expert testimony as to mental state in the absence of an insanity plea would confuse and create immaterial issues. If permitted, such experts could explain and justify criminal conduct. As lay people we could guess that almost everyone who commits crimes against society must have some psychiatric or psychological problem. However, the test continues to be legal insanity as defined and not otherwise, and the court and jury should not be subjected to testimony as to mental flaws and justifications where the defendant knew the difference between right and wrong at the time of the crime.
Id. at 707-08. Accord Zeigler v. State, 402 So.2d 365 (Fla. 1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982); Bradshaw v. State, 353 So.2d 188 (Fla. 2d *822 DCA 1977). As recently as 1987, this Court held that evidence of mental retardation was inadmissible during the guilt phase of a first-degree murder case in the absence of a defense of insanity. Kight v. State, 512 So.2d 922 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988).
The only departure from this line of authority is found in Gurganus v. State, 451 So.2d 817 (Fla. 1984), in which it was said that "evidence of any condition relating to the accused's ability to perform a specific intent" is relevant. However, this statement was obiter dictum because that issue was not before the Court. Gurganus simply reaffirmed the long-standing rule in Florida that evidence of voluntary intoxication is admissible in cases involving specific intent. Accord Garner v. State, 28 Fla. 113, 9 So. 835 (1891). Most states follow the same rule, although a few of them decline to permit evidence of involuntary intoxication as a defense even to specific intent crimes. See Annot., Modern Status of the Rules as to Voluntary Intoxication as Defense to Criminal Charge, 8 A.L.R.3d 1236, at § 3[a] (1966).
The issue presented by this case is not a new one. In his article entitled "Psychiatric Evidence in Criminal Cases for Purposes Other Than the Defense of Insanity," Professor Lewin explains:
Partial responsibility has been recognized for at least 100 years but it was not until the late 1950's that the Supreme Court of California in a series of decisions promulgated the modern concept and excited the imaginations of forensic psychiatrists, behavioral scientists and related scholars. Simply stated, the theory is that if because of mental disease or defect a defendant cannot form the specific state of mind required as an essential element of a crime, he may be convicted only of a lower grade of the offense not requiring that particular mental element. For example, if D is charged with the premeditated slaying of V, partial responsibility would enable a psychiatrist to testify that a mental disease interfered with D's capacity to formulate a plan. Thus a jury could find that D acted impulsively and without premeditation and therefore find D guilty of a lesser grade of homicide. The defense is thus available to reduce first degree murder requiring the specific intent elements of deliberation, premeditation and intent to kill to second degree murder, or even to manslaughter. Although generally applied to first degree murder cases, it is in theory applicable to any crime requiring proof of a specific intent, such as larceny or robbery.
26 Syracuse L.Rev. 1051, 1054-55 (1975) (footnotes omitted).
Differing terminology has sometimes clouded an understanding of the defense, as explained in Muench v. Israel, 715 F.2d 1124, 1142-43 (7th Cir.1983), cert. denied sub nom. Worthing v. Israel, 467 U.S. 1228, 104 S.Ct. 2682, 81 L.Ed.2d 878 (1984):
Petitioners, of course, claim they are not attempting to impose upon Wisconsin what they call a "diminished responsibility defense," thereby attempting to capitalize on the somewhat misleading nature of that particular label for the doctrine. A distinction can be drawn between the theory advanced by petitioners  admitting evidence of mental illness which is explicitly tied (at least grammatically) to the specific mens rea at issue, and a doctrine which might accurately be called diminished responsibility  admitting evidence of mental illness as a vague and general mitigating factor. See Arenella, The Diminished Capacity and Diminished Responsibility Defenses: Two Children of a Doomed Marriage, 77 Colum.L.Rev. 827 (1977). However, the courts have used the labels diminished responsibility, diminished capacity, and other nomenclature merely as a shorthand for the proposition that expert evidence of mental abnormalities is admissible on the question of whether the defendant in fact possessed a particular mental state which is an element of the charged offense. E.g. Bethea v. United States, 365 A.2d 64, 83-84 n. 41 (D.C.App. 1976), cert. denied, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977). See generally, W. LaFave & A. *823 Scott, Handbook on Criminal Law § 42 at 325-26 (1972) (calling adoption of the doctrine the "better view"). When a court rejects the doctrine of diminished capacity, it is saying that psychiatric evidence is inadmissible on the mens rea issue, as recent cases rejecting the doctrine explain. State v. Wilcox, 70 Ohio St.2d 182, 436 N.E.2d 523 (1982); State v. Edwards, 420 So.2d 663 (La. 1982); People v. Atkins, 117 Mich. App. 430, 324 N.W.2d 38 (1982); Johnson v. State, 292 Md. 405, 439 A.2d 542 (Md. 1982); State v. Bouwman, 328 N.W.2d 703 (Minn. 1982).
Following the lead of California, approximately one-half the states and federal jurisdictions now approve the defense. 1 W. LaFave & A. Scott, Substantive Criminal Laws § 4.7 (1986). Yet, it was recently noted in State v. Wilcox, 70 Ohio St.2d 182, 186, 436 N.E.2d 523, 525 (1982):
At this juncture, however, it appears that enthusiasm for the diminished capacity defense is on the wane and that there is, if anything, a developing movement away from diminished capacity although the authorities at this point are still quite mixed in their views. See ... generally, Annotation, 22 A.L.R.3d 1228.
It is also clear that a state is not constitutionally compelled to recognize the doctrine of diminished capacity. Muench v. Israel. See also Fisher v. United States, 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946).
The adoption of the principle of diminished capacity has usually been justified on the premise that mentally deficient persons should be treated in the same manner as intoxicated persons. See United States v. Brawner, 471 F.2d 969 (D.C. Cir.1972). However, several recent cases have sharply rejected this analogy. Thus, in Bethea v. United States, 365 A.2d 64, 88 (D.C. 1976), cert. denied, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977), the court said:
We recognize that there are exceptions to the basic principle that all individuals are presumed to have a similar capacity for mens rea. The rule that evidence of intoxication may be employed to demonstrate the absence of specific intent figured prominently in the Brawner court's advocacy of consistency in the treatment of expert evidence of mental impairment. The asserted analogy is flawed, however, by the fact that there are significant evidentiary distinctions between psychiatric abnormality and the recognized incapacitating circumstances. Unlike the notion of partial or relative insanity, conditions such as intoxication, medication, epilepsy, infancy, or senility are, in varying degrees, susceptible to quantification or objective demonstration, and to lay understanding. As the Ninth Circuit observed in Wahrlich v. Arizona, 479 F.2d 1137, 1138 (9th Cir.), cert. denied, 414 U.S. 1011, 94 S.Ct. 375, 38 L.Ed.2d 249 (1973):
Exposure to the effects of age and of intoxicants upon state of mind is a part of common human experience which fact finders can understand and apply; indeed, they would apply them even if the state did not tell them they could. The esoterics of psychiatry are not within the ordinary ken.
(Footnotes omitted.)
In the same vein, the court in State v. Wilcox said:
It takes no great expertise for jurors to determine whether an accused was "`so intoxicated as to be mentally unable to intend anything (unconscious),'" .. . whereas the ability to assimilate and apply the finely differentiated psychiatric concepts associated with diminished capacity demands a sophistication (or as critics would maintain a sophistic bent) that jurors (and officers of the court) ordinarily have not developed. We are convinced as was the Bethea court, that these "significant evidentiary distinctions" preclude treating diminished capacity and voluntary intoxication as functional equivalents for purposes of partial exculpation from criminal responsibility.
70 Ohio St.2d at 194, 436 N.E.2d at 530 (citation omitted). Accord State v. Bouwman, 328 N.W.2d 703 (Minn. 1982).
The adverse consequences of adopting the defense of diminished capacity were recognized by the court in Bethea v. United States:

*824 Under the present statutory scheme, a successful plea of insanity avoids a conviction, but confronts the accused with the very real possibility of prolonged therapeutic confinement. If, however, psychiatric testimony were generally admissible to cast a reasonable doubt upon whatever degree of mens rea was necessary for the charged offense, thus resulting in outright acquittal, there would be scant reason indeed for a defendant to risk such confinement by arguing the greater form of mental deficiency. Thus, quite apart from the argument that the diminished capacity doctrine would result in a considerably greater likelihood of acquittal for those who by traditional standards would be held responsible, the future safety of the offender as well as the community would be jeopardized by the possibility that one who is genuinely dangerous might obtain his complete freedom merely by applying his psychiatric evidence to the threshold issue of intent.
365 A.2d at 90-91 (footnotes omitted).
To permit the defense of diminished capacity would invite arbitrary applications of the law because of the nebulous distinction between specific and general intent crimes. See Linehan v. State, 442 So.2d 244 (Fla. 2d DCA 1983), approved, 476 So.2d 1262 (Fla. 1985). Moreover, a recognition of the defense would open the door to consequences which could seriously affect our society. In a case of first-degree premeditated murder,[*] a finding of diminished mental capacity would serve to reduce the conviction to a lesser homicide. However, in the case of robbery, which was held to be a specific intent crime in Bell v. State, 394 So.2d 979 (Fla. 1981), the application of diminished capacity could result in an absolute acquittal of any crime whatsoever. This is so because the only necessarily lesser included offense of robbery is petit theft and that, too, is a specific intent crime. State v. Allen, 362 So.2d 10 (Fla. 1978). Apparently, the same would be true for battery, Mellins v. State, 395 So.2d 1207 (Fla. 4th DCA), review denied, 402 So.2d 613 (Fla. 1981). Since burglary is also a specific intent crime, Presley v. State, 388 So.2d 1385 (Fla. 2d DCA 1980), one acquitted of that offense could only be convicted, if at all, of trespass. Unlike the case where one is found not guilty by reason of insanity, there would be no authority to commit these persons for treatment except through the use of civil remedies and its concomitant burdens.
In criticizing the principle of diminished capacity, Abraham Goldstein, in his comprehensive book entitled The Insanity Defense, stated:
There are several reasons for limiting the subjective inquiry to instances when the insanity defense is pleaded. One is the reluctance to believe it is possible to know what passes through a man's mind. From this comes the feeling that acts are the only reliable indices, and with it the suspicion that the person who claims he was not "responsible" for his acts is lying. If he should win his freedom by virtue of what are probably lies, the security of society would be threatened. A second is that the use of a subjective theory would probably result in more acquittals. Yet such acquittals might bring freedom for defendants who have proved themselves less able than most men to control their conduct, thereby increasing the threat to society. The insanity defense takes both these problems into account by allowing a full presentation of the defendant's mental life while, at the same time, providing a way of keeping him in custody if it should seem necessary.
A. Goldstein, The Insanity Defense 192 (1967).
We acknowledge the cogent reasons expressed in Bethea v. United States for declining to adopt the defense of diminished capacity:
The concept of insanity is simply a device the law employs to define the outer limits of that segment of the general population to whom these presumptions concerning *825 the capacity for criminal intent shall not be applied. The line between the sane and the insane for the purposes of criminal adjudication is not drawn because for one group the actual existence of the necessary mental state (or lack thereof) can be determined with any greater certainty, but rather because those whom the law declares insane are demonstrably so aberrational in their psychiatric characteristics that we choose to make the assumption that they are incapable of possessing the specified state of mind. Within the range of individuals who are not "insane", the law does not recognize the readily demonstrable fact that as between individual criminal defendants the nature and development of their mental capabilities may vary greatly... . By contradicting the presumptions inherent in the doctrine of mens rea, the theory of diminished capacity inevitably opens the door to variable or sliding scales of criminal responsibility. Cf. United States v. Moore, supra, 158 U.S.App.D.C. [375] at 381, 486 F.2d 1139 at 1145 [(1973)]. We should not lightly undertake such a revolutionary change in our criminal justice system.
365 A.2d at 87-88 (footnotes omitted).
Finally, we note the pertinent comment in State v. Wilcox:
[T]he effect of adopting a diminished capacity model transcends the doctrine's potential to transform criminal trials into psychiatric shouting matches. Rather, the diminished capacity theory forcefully challenges conventional concepts of culpability and "involve[s] a fundamental change in the common law theory of responsibility." Fisher, supra, 328 U.S. at 476, 66 S.Ct. at 1325. Echoing Bethea, "[w]e conclude that the potential impact of concepts such as diminished capacity or partial insanity  however labeled  is of a scope and magnitude which precludes their proper adoption by an expedient modification of the rules of evidence. If such principles are to be incorporated into our law of criminal responsibility, the change should lie within the province of the legislature." Bethea, supra, [365 A.2d] at page 92. See Fisher, supra, 328 U.S. at page 476, 66 S.Ct. at 1325.
70 Ohio St.2d at 198-99, 436 N.E.2d at 533. See also State v. Doss, 116 Ariz. 156, 568 P.2d 1054 (1977); State v. Edwards, 420 So.2d 663 (La. 1982); People v. Atkins, 117 Mich. App. 430, 324 N.W.2d 38 (1982), all of which have recently rejected the doctrine of diminished capacity.
It could be said that many, if not most, crimes are committed by persons with mental aberrations. If such mental deficiencies are sufficient to meet the definition of insanity, these persons should be acquitted on that ground and treated for their disease. Persons with less serious mental deficiencies should be held accountable for their crimes just as everyone else. If mitigation is appropriate, it may be accomplished through sentencing, but to adopt a rule which creates an opportunity for such persons to obtain immediate freedom to prey on the public once again is unwise.
We approve the decision of the district court of appeal.
It is so ordered.
EHRLICH, C.J., and McDONALD, J., concur.
SHAW, J., concurs specially with an opinion.
OVERTON, J., dissents with an opinion, in which BARKETT and KOGAN, JJ., concur.
SHAW, Justice, specially concurring.
I agree fully with the majority opinion. I write only to note again that the nebulous distinction between general and specific intent crimes and the defense of voluntary intoxication bear reexamination in a suitable case. Linehan v. State, 476 So.2d 1262, 1266 (Fla. 1985) (Shaw, J., dissenting).
OVERTON, Justice, dissenting.
In my view, it is totally unreasonable and illogical to allow a defendant to present evidence of voluntary intoxication and drug use as a defense to the element of specific intent to commit first-degree premeditated *826 murder, but then to prohibit another defendant from presenting objective evidence of involuntary organic brain damage on the same issue. This results in a clear injustice. One court addressed the indefensibility of this position and stated:
Neither logic nor justice can tolerate a jurisprudence that defines the elements of an offense as requiring a mental state such that one defendant can properly argue that his voluntary drunkenness removed his capacity to form the specific intent but another defendant is inhibited from a submission of his contention that an abnormal mental condition, for which he was in no way responsible, negated his capacity to form a particular specific intent, even though the condition did not exonerate him from all criminal responsibility.
United States v. Brawner, 471 F.2d 969, 999 (D.C. Cir.1972). The rule expressed by the majority is contrary to the weight of authority, the Model Penal Code, and the American Bar Association Standards for Criminal Justice.
The issue here should be rephrased and limited to the evidentiary question of whether a defendant may introduce objective evidence of organic brain damage to establish that he lacked the requisite mental state of first-degree premeditated murder. I totally disagree with the characterization of the issue as one of whether we should adopt the diminished capacity doctrine.[1] The relevant issue in this case is clearly distinguishable from the question of whether we should adopt the diminished capacity doctrine as an insanity defense. The American Bar Association Standards for Criminal Justice articulate this distinction and state:
The term diminished capacity has often been employed in discussions about evidence of abnormal mental condition as it relates to mens rea. However, this standard and its commentary have eschewed the use of the phrase because it is misleading. To apply the term diminished capacity connotes the existence of an intermediate criterion of partial culpability  a capacity somewhat impaired but not so fully impaired as to establish a nonresponsibility defense. Mens rea testimony does not bear such a linear relationship to the defense of mental nonresponsibility [insanity]: Defendants may have had the requisite mens rea in a technical sense, and nonetheless be exculpated under the nonresponsibility defense; conversely, evidence concerning mental condition or functioning may be relevant to the mens rea question even though it does not establish a mental disease of a kind or severity required as a predicate for the nonresponsibility defense. Whether evidence of mental condition should be admitted if it is relevant to the existence of a state of mind required for conviction is purely an evidentiary question, not an issue of substantive criminal law doctrine.
Standards for Criminal Justice, Standard 7-6.2 commentary at 316-17 (1986) (emphasis in original; footnote omitted).
Regrettably, Florida has not adopted a consistent standard for admitting mental condition evidence to establish whether a defendant had the requisite specific intent to commit a particular crime. On the one hand, Florida has permitted evidence of voluntary intoxication concerning a defendant's mental state for specific intent crimes for almost one hundred years. In Garner v. State, 28 Fla. 113, 9 So. 835 (1891), this Court stated:
Whenever, however, a specific or particular intent is an essential or constituent element of the offense, intoxication, though voluntary, becomes a matter for consideration, or is relevant evidence, with reference to the capacity or ability of the accused to form or entertain the particular intent, or upon the question whether the accused was in such a condition of mind as to form a premeditated design. Where a party is too drunk to entertain or be capable of forming the essential particular intent, such intent *827 can, of course, not exist, and no offense, of which such intent is a necessary ingredient, can be perpetrated.
Id. 28 Fla. at 153-54, 9 So. at 845. We recently reaffirmed this view in Gurganus v. State, 451 So.2d 817 (Fla. 1984), holding:
It is clear that Gurganus' ability to entertain a specific intent at the time of the offense, an element required to be proved by the state, was a relevant issue pertaining to both the first-degree murder and the attempted first-degree murder charges regardless of whether the state sought conviction under either a premeditated or a felony murder theory... .
... .

When specific intent is an element of the crime charged, evidence of voluntary intoxication, or for that matter evidence of any condition relating to the accused's ability to form a specific intent, is relevant... . In this case, after having been told to presume that Gurganus had ingested Fiorinal and alcohol the psychologists testified that Gurganus would have a lessened capability for making rational choices and directing his own behavior, he would not be in effective control of his behavior, and would have had a mental defect causing him to lose his ability to understand or reason accurately. We find these responses to be relevant to the issue of Gurganus' ability to form or entertain a specific intent at the time of the offense. Their exclusion from evidence was error.
Id. at 822-23 (citations omitted; emphasis added). On the other hand, as the majority noted, there are Florida decisions expressly rejecting other types of evidence concerning a defendant's mental state. See Kight v. State, 512 So.2d 922 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988); Zeigler v. State, 402 So.2d 365 (Fla. 1981), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982); Everett v. State, 97 So.2d 241 (Fla. 1957), cert. denied, 355 U.S. 941, 78 S.Ct. 432, 2 L.Ed.2d 422 (1958); Ezzell v. State, 88 So.2d 280 (Fla. 1956); Bradshaw v. State, 353 So.2d 188 (Fla. 2d DCA 1977); Tremain v. State, 336 So.2d 705 (Fla. 4th DCA 1976), cert. denied, 348 So.2d 954 (1977).
A clear majority of other jurisdictions have held that organic brain damage evidence is admissible, at least in first-degree murder cases, on the question of specific intent. See People v. Wingo, 14 Cal.3d 169, 534 P.2d 1001, 121 Cal. Rptr. 97 (1975); Becksted v. People, 133 Colo. 72, 292 P.2d 189 (1956); State v. Burge, 195 Conn. 232, 487 A.2d 532 (1985); State v. Clokey, 83 Idaho 322, 364 P.2d 159 (1961); Wilson v. State, 263 Ind. 469, 333 N.E.2d 755 (1975); State v. Plowman, 386 N.W.2d 546 (Iowa Ct. App. 1986); Todd v. Commonwealth, 716 S.W.2d 242 (Ky. 1986); Commonwealth v. Grey, 399 Mass. 469, 505 N.E.2d 171 (1987); People v. Mangiapane, 85 Mich. App. 379, 271 N.W.2d 240 (Ct.App. 1978); State v. Anderson, 515 S.W.2d 534 (Mo. 1974); Starkweather v. State, 167 Neb. 477, 93 N.W.2d 619 (1958); State v. Roman, 168 N.J. Super. 344, 403 A.2d 24 (Super.Ct.App.Div. 1979); State v. Holden, 85 N.M. 397, 512 P.2d 970 (Ct.App.), cert. denied, 85 N.M. 380, 512 P.2d 953 (1973); People v. Morales, 125 A.D.2d 605, 509 N.Y.S.2d 658 (1986), appeal denied, 70 N.Y.2d 651, 518 N.Y.S.2d 1044, 512 N.E.2d 570 (1987); State v. Nichols, 3 Ohio App.2d 182, 209 N.E.2d 750 (Ct.App. 1965); State v. Schleigh, 210 Or. 155, 310 P.2d 341 (1957); Commonwealth v. Terry, 513 Pa. 381, 521 A.2d 398, cert. denied, 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987); State v. Correra, 430 A.2d 1251 (R.I. 1981); Cowles v. State, 510 S.W.2d 608 (Tex. Crim. App. 1974); State v. Romero, 684 P.2d 643 (Utah 1984); State v. Smith, 136 Vt. 520, 396 A.2d 126 (1978); State v. Edmon, 28 Wash. App. 98, 621 P.2d 1310 (1981); State v. Flattum, 122 Wis.2d 282, 361 N.W.2d 705 (1985); Kind v. State, 595 P.2d 960 (Wyo. 1979). Further, both the Model Penal Code[2] and the American Bar Association *828 Standards for Criminal Justice[3] state that organic brain damage evidence should be admitted on the issue of specific intent.
In the case primarily relied on by the majority, Bethea v. United States, 365 A.2d 64 (D.C.App. 1976), cert. denied, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977), that court, while emphatically rejecting subjective psychiatric evidence, expressly recognized that objective evidence of epilepsy and senility was a proper matter to be presented to the jury concerning mens rea, and stated:
We recognize that there are exceptions to the basic principle that all individuals are presumed to have a similar capacity for mens rea. The rule that evidence of intoxication may be employed to demonstrate the absence of specific intent figured prominently in the Brawner court's advocacy of consistency in the treatment of expert evidence of mental impairment. The asserted analogy is flawed, however, by the fact that there are significant evidentiary distinctions between psychiatric abnormality and the recognized incapacitating circumstances. Unlike the notion of partial or relative insanity, conditions such as intoxication, medication, epilepsy, infancy, or senility are, in varying degrees, susceptible to quantification or objective demonstration, and to lay understanding. As the Ninth Circuit observed in Wahrlich v. Arizona, 479 F.2d 1137, 1138 (9th Cir.), cert. denied, 414 U.S. 1011, 94 S.Ct. 375, 38 L.Ed.2d 249 (1973):
Exposure to the effects of age and of intoxicants upon state of mind is a part of common human experience which fact finders can understand and apply; indeed, they would apply them even if the state did not tell them they could. The esoterics of psychiatry are not within the ordinary ken.
Id. at 88 (emphasis added).
Clearly, epilepsy and senility are no different from other objective evidence of brain damage. While I could agree that it is justifiable to reject subjective evidence of an abnormal mental condition, I find no justification for rejecting objective evidence of organic brain damage. A uniform rule should be applied for both intoxication and objective brain damage. I would also note that the majority's decision appears to violate the equal protection and due process clauses of both the United States and Florida Constitutions because no reasonable classification or distinction to justify different treatment exists.
In this case, the defendant established evidence of permanent organic brain damage. Consequently, he was entitled to present this evidence to address whether he had the specific intent required for first-degree premeditated murder. This defense, as it would for an intoxicated defendant, would allow the jury to reduce the offense from first-degree premeditated murder to second-degree murder or manslaughter since the latter two are not specific intent crimes.
I would rephrase the First District's certified question as follows:
Is objective evidence of an abnormal mental condition resulting from organic brain damage, but not constituting legal insanity, admissible in a first-degree premeditated murder case to prove that the accused could not or did not entertain the requisite specific intent?
Given the circumstances and the long-established defense of intoxication in Florida, I would answer this question in the affirmative. If we are going to exclude organic brain damage, then we should also exclude intoxication.
BARKETT and KOGAN, JJ., concur.
NOTES
[*] Ironically, the defense might not be available to one charged with first-degree felony murder providing the underlying felony was not a specific intent crime.
[1] This doctrine is also known as the diminished responsibility doctrine or the partial responsibility doctrine.
[2] Section 4.02(1) reads as follows: "Evidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did or did not have a state of mind which is an element of the offense."
[3] Standard 7-6.2 states: "Evidence, including expert testimony, concerning the defendant's mental condition at the time of the alleged offense which tends to show the defendant did or did not have the mental state required for the offense charged should be admissible."