NORTHCUTT, Judge.
The State accused Sarah Slicker of committing a lewd or lascivious molestation, a first-degree felony, when she disrobed in front of a young boy. A jury convicted Slicker of a lesser included second-degree felony, lewd or lascivious exhibition. However, the trial was tainted by the erroneous exclusion of relevant defense evidence. Therefore, we reverse Slicker’s conviction and remand for a new trial.
Slicker acknowledged that she had removed her clothes in the boy’s presence. At the time of the incident, Slicker was twenty-one years old. She had been babysitting since her pre-teens, had worked at her church nursery and as a camp counsel- or, and was starting a youth ministry at her church. She had recently graduated from college with a bachelor’s degree in preschool primary education, and she planned to pursue an advanced degree.
About three months before the incident, Slicker agreed to serve as nanny to the four-year-old son and eighteen-month-old daughter of a busy professional couple. At trial, Slicker recounted that she accepted the job despite some misgivings. In addition to the long hours she worked caring for these children, she helped in her father’s business, assisted her grandmoth *1193 er, watched a neighbor’s house and pets, and tried to keep longstanding weekly appointments to baby-sit for other families. During this time, Slicker testified, she became increasingly exhausted and overstressed by her efforts to meet the demands of the nanny job while honoring her other commitments.
By all accounts, the boy was rather active and something of a handful. Slicker testified that on the afternoon in question she was tending the children while their parents were out. She and the boy were sitting on a couch watching a video, when he began nagging her to take off her clothes. Slicker testified that, stressed and worn out, she made a snap decision that it would just be quicker to capitulate and get it over with than to keep arguing with this demanding child.
To convict Slicker of either the lewd or lascivious molestation offense or the lesser included lewd or lascivious exhibition offense, the State was required to prove that she acted with a lewd or lascivious intent. §§ 800.04(5), (7), Fla. Stat. (2003). This is defined as “a wicked, lustful, unchaste, licentious, or sensual intent[.]” Fla. Std. Jury Instr. (Crim.). The jury was also instructed on the offense of exposing sexual organs in violation of section 800.03, which required proof of “an unlawful indulgence in lust or a wicked, lustful, unchaste, licentious or sensual intent[,]” and the offense of committing an unnatural and lascivious act in violation of section 800.02, which required proof of a lascivious intent described as “lustful, normally intending to excite a desire for sexual satisfaction.” Fla. Std. Jury Instr. (Crim.). Obviously, then, Slicker’s state of mind was an essential element of the State’s case. Indeed, it was the only disputed issue at trial.
The State attempted to prove that Slicker acted with the requisite intent by circumstantial evidence, essentially arguing that her action spoke for itself. Slicker contended that she acted during a momentary and isolated lapse in judgment owing to her physical and mental fatigue. To support her defense, Slicker wanted to present witnesses who had observed her deterioration during the months she worked as this family’s nanny. She proffered the testimony of three lay witnesses who had known her for many years. These witnesses described a change in Slicker’s physical and mental condition occurring after she began the job. They also recounted Slicker’s comments during this period about the stress she was feeling while trying to juggle her obligations.
When proffering this evidence, Slicker argued that it was relevant and admissible to show why she acceded to the child’s request and to negate any inference that she did so with a lewd or lascivious intent. The State successfully urged the trial court to exclude the testimony on two grounds.
For one thing, the State argued that the evidence was inadmissible hearsay. This was incorrect. Insofar as the witnesses would have related their personal observations, their testimony would not have been hearsay. See § 90.801(l)(e), Fla. Stat. (2003) (defining hearsay as an out-of-court statement admitted to prove the truth of the matter asserted). On the other hand, the witnesses’ testimony about Slicker’s statements regarding the stress and pressure she felt after taking the nanny position would have been hearsay. But it was not inadmissible as such, because it fell within the following exception to the hearsay rule:
A statement of the declarant’s then-existing state of mind, emotion, or physical sensation, including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health,' when such evidence is offered to:
1. Prove the declarant’s state of mind, emotion, or physical sensation at *1194 that time or at any other time when such state is an issue in the action.
2. Prove or explain acts of subsequent conduct of the declarant.
§ 90.803(3)(a). Because Slicker’s state of mind was an issue and the evidence was offered to explain her subsequent conduct, the testimony should not have been excluded on hearsay grounds.
The State’s primary argument against admitting this evidence was that it tended to prove Slicker’s diminished capacity, which is not a recognized defense in Florida. See Chestnut v. State, 538 So.2d 820 (Fla.1989). In Chestnut, the supreme court observed that diminished capacity is “shorthand for the proposition that expert evidence of mental abnormalities is admissible on the question of whether the defendant in fact possessed a particular mental state which is an element of the charged offense.” Id. at 822. “When a court rejects the doctrine of diminished capacity, it is saying that psychiatric evidence is inadmissible on the mens rea issue....” Id. at 823. In that case, the court affirmed the exclusion of expert testimony regarding the defendant’s abnormal mental condition, which had been offered to show that he could not have formed the specific intent necessary for premeditated murder.
In this case, Slicker offered only lay testimony, not expert testimony, and it is more properly characterized as state-of-mind evidence. Moreover, the evidence regarding Slicker’s stress and fatigue was not offered to prove that she suffered a psychiatric abnormality, and it was susceptible to lay understanding. See Chestnut, 538 So.2d at 823 (explaining that human experience provides an understanding for the effects of common conditions upon state of mind without resort to the “esoter-ics of psychiatry”) (quoting Bethea v. United States, 365 A.2d 64, 68 (D.C.1976)). As the supreme court later explained in Bunney v. State, 603 So.2d 1270, 1272 (Fla.1992), Chestnut drew a distinction between evidence of “commonly understood conditions,” which is admissible, and evidence of “relatively esoteric conditions,” which is not admissible absent an insanity defense.
The distinction applies to this case. Slicker did not attempt to introduce expert testimony that she suffered a mental abnormality. Rather, she offered lay testimony bearing on her then-existing mental and emotional state, which was relevant to her intent at the time of the offense. As such, the evidence was relevant and admissible.
The State has not argued that the exclusion of this evidence was harmless, and we would not find it to be so. The parents who employed Slicker testified that they did not observe any changes in their nanny and that what they noticed, they were told, was normal for her. But they had known Slicker only three months. The defense witnesses, however, noticed dramatic changes, and they had known Slicker for many years. The excluded evidence went to an essential element of the State’s case and to the heart of Slicker’s defense. See Rivera v. State, 561 So.2d 536, 539 (Fla.1990) (stating that error occurs when evidence tending to support the theory of defense is excluded). As the State argued in closing, “it’s the totality of all these circumstances where you can find your intent.” In order to decide whether Slicker acted with the necessary lewd intent, the jury should have been informed of the totality of the circumstances in which she acted.
Accordingly, we reverse and remand for a new trial.
SILBERMAN and LaROSE, JJ„ Concur.