DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BRANDON LEE COWINS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-2564

[September 11, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Daliah Weiss, Judge; L.T. Case No. 502021CF006170AXXXMB.

Carey Haughwout, Public Defender, and Virginia J. Murphy, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Kimberly T. Acuña, Senior Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The defendant appeals from his conviction and sentence for second degree murder with a weapon (as a lesser included offense of first degree murder with a weapon). The defendant argues the circuit court erred in three respects, by: (1) granting the state's motion in limine to exclude expert opinion evidence that the defendant suffered from post-traumatic stress disorder ("PTSD"), where such evidence related to the defendant's justifiable use of deadly force defense; (2) finding the state's peremptory strike of a prospective African American juror was genuine; and (3) denying the defendant's request for a special jury instruction on "impulsive overreactions" to an attack.

We affirm on all three arguments. We write to address only the defendant's first argument. In affirming on that argument, we adopt the Second District's reasoning in *Oquendo v. State*, 357 So. 3d 214 (Fla. 2d DCA 2023), and certify conflict with the First District's decision in *State v. Mizell*, 773 So. 2d 618 (Fla. 1st DCA 2000).

In *Oquendo,* as here, the defense, in support of its self-defense claim, gave notice it would attempt to admit expert testimony that the defendant suffered from PTSD and proffered the expert's testimony at a pretrial hearing.  357 So. 3d at 216.  The expert indicated that the defendant had been suffering from PTSD for a number of years and that a person with PTSD would be naturally inclined to believe that a situation was threatening.  *Id.*  The defense contended such testimony that the defendant suffered from PTSD was relevant to his self-defense claim— particularly his elevated perception of danger.  *Id.*

The circuit court in *Oquendo* excluded the expert's PTSD testimony because, among other reasons, the testimony would not be relevant to the defendant's self-defense claim in light of the objective standard for establishment of that justification, and thus the testimony would not be helpful to the jury's understanding of the case.  *Id.*

The Second District affirmed, concluding that the circuit court's reasoning was "well-taken."  *Id.*  The Second District pertinently added:

> Under Florida law, "[a] person is justified in using or threatening to use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony."  § 776.012(2), Fla. Stat. (2015).  "The conduct of a person acting in self[-]defense is measured by an objective standard, but the standard must be applied to the facts and circumstances as they appeared at the time of the altercation to the one acting in self[-]defense."  *Shreiteh v. State*, 987 So. 2d 761, 763 (Fla. 4th DCA 2008) (quoting *Price v. Gray's Guard Serv., Inc.*, 298 So. 2d 461, 464 (Fla. 1st DCA 1974)); *see also Chaffin v. State*, 121 So. 3d 608, 612 (Fla. 4th DCA 2013) ("The law does not ascribe a subjective standard as to a defendant's state of mind[ ] but concerns a reasonably prudent person's state of mind.").  This objective standard is formalized in the standard self-defense jury instruction:
>
> > In deciding whether (defendant) was justified in the [use] [or] [threatened use] of deadly force, you must consider the circumstances by which [he] [she] was surrounded at the time the [force] [or] [threat of force] was used.  The danger need not have been actual; however, to justify the [use] [or] [threatened use] of

2

deadly force, the appearance of danger must have been so real that a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that [force] [or] [threat of force]. Based upon appearances, (defendant) must have actually believed that the danger was real.

Fla. Std. Jury Instr. (Crim.) 3.6(f) (brackets in original).

… Use of evidence of a disorder affecting a defendant's perceptions would necessarily be—as it was here—in support of a theory that the defendant's belief was more reasonable to him than it might have been to one not suffering from such a disorder. Such use, premised as it is on the defendant's subjective comprehension of the situation, is incompatible with the objective standard of reasonableness required to support the justification of self[-]defense. *Cf. State v. Nazario,* 726 So. 2d 349, 350 (Fla. 3d DCA 1999) (concluding that evidence tending to prove the defendant committed the homicide because of "an involuntary survival instinct" was inadmissible).

In other words, the peculiarity of a defendant's mental state is not germane to the question of whether "a reasonably cautious and prudent person under the same circumstances would have believed that the danger could be avoided only through the use of that [force]." Fla. Std. Jury Instr. (Crim.) 3.6(f) (brackets in original). Because the jury was required to apply an objective-person standard when determining whether [the defendant] was justified in using force against the victim, the expert testimony regarding [the defendant's] PTSD was irrelevant.

*Id.* at 217-18 (other internal citations omitted).

In reaching the foregoing decision, the Second District certified conflict with the First District's *Mizell* decision. *Id.* at 221. In *Mizell,* the First District had held: "PTSD evidence is relevant on the question of self-defense." 773 So. 2d at 621. The First District had based its holding on the premise "that a defendant's perceptions are relevant when assessing applicability of self-defense." *Id.* The Second District rejected *Mizell*'s holding and premise by pertinently reasoning:

The First District's conclusion does not follow from its premise, in part because its rationale was based on an incomplete analysis of the self-defense jury instruction. *See* [*Mizell*, 773 So. 2d at 621] (relying on the jury instruction's admonition that "[b]ased upon appearances, (defendant) must have actually believed that the danger was real." (quoting Fla. Std. Jury Instr. (Crim.) 45, 48)). Of course, it is true that a defendant's *perceptions* are relevant—*what* he ascertained with his senses constitutes the circumstances under which he was required to assess whether the threat justified the use of force he exerted. However, that does not make the self-defense test a subjective one, and it does not follow that a defendant's *misperceptions*—his misunderstanding of reality as altered by a disorder such as PTSD—are relevant. The self-defense jury instruction not only requires that the defendant have "actually believed that the danger was real" but also that his belief was objectively reasonable: "The danger need not have been actual; however, … the appearance of danger must have been so real that *a reasonably cautious and prudent person under the same circumstances* would have believed that the danger could be avoided only through the use of that [force] [or] [threat of force]." Fla. Std. Jury Instr. (Crim.) 3.6(f) (brackets in original) (emphasis added). Evidence that a defendant's perceptions might have been altered by a condition such as PTSD—or that his tendency to perceive danger was uniquely heightened compared to others who do not suffer from such a condition—is not probative of what a reasonably cautious and prudent person under the same circumstances would have believed to be the extent of the danger or lack thereof. *Cf.* § 90.401, Fla. Stat. (2015) ("Relevant evidence is evidence tending to prove or disprove a material fact." (emphasis added)).

Evidence of [the defendant's] PTSD would only go to show that his reaction was objectively *unreasonable* by virtue of a potential *misperception* of the dangerousness of the situation—i.e., that something others would not deem to be dangerous appeared to him to be so. *Cf.* § 776.012(2) (providing a justification for a defendant's use of force "if he or she *reasonably* believes" his or her use of force was necessary (emphasis added)). Indeed, counsel made it clear that was why he sought to introduce the evidence, explaining that it could show "how somebody who suffers from post-traumatic stress can react differently to a high-stress situation as

4

opposed to somebody that does not." Not only is such evidence irrelevant to a self-defense theory, its exclusion could also be justified on the basis that it is inadmissible diminished-capacity evidence. *See, e.g., Chestnut v. State*, 538 So. 2d 820, 820 (Fla. 1989) (finding "evidence of an abnormal mental condition not constituting legal insanity" inadmissible to prove "that the accused could not or did not entertain the specific intent or state of mind essential to proof of the offense"); *Nazario*, 726 So. 2d at 350 (noting "Florida's longstanding refusal to admit a defense based upon an irresistible impulse or a diminished mental capacity theory, where the defendant's sanity is not at issue" and explaining that "expert testimony that a defendant suffered from a mental infirmity, disease, or defect without concluding that, as a result, the defendant was insane as defined by the 'M'Naghten Rule,' is irrelevant"). Allowing admission of evidence of the defendant's unique mental state when it is not relevant to a permissible defense or justification could invite confusion and potentially mislead the jury to excuse acts for which a defendant is culpable under the law. *See Chestnut*, 538 So. 2d at 821 ("[T]o allow expert testimony as to mental state in the absence of an insanity plea would confuse and create immaterial issues. ... [T]he theory of diminished capacity inevitably opens the door to variable or sliding scales of criminal responsibility." (first quoting *Tremain v. State*, 336 So. 2d 705, 707–08 (Fla. 4th DCA 1976); and then quoting *Bethea v. United States*, 365 A.2d 64, 88 (D.C. Cir. 1976))).

*Id.* at 218-19.

We adopt the Second District's reasoning in *Oquendo* in full. We also observe that the Florida Supreme Court has accepted jurisdiction in *Oquendo*, presumably based on the Second District's certification of conflict with the First District's *Mizell* decision. *See Oquendo v. State*, SC2023-0807, 2023 WL 7132836 (Fla. Oct. 30, 2023). To enable appellate review of our adoption of the Second District's reasoning in *Oquendo*, we also certify conflict with the First District's *Mizell* decision.

*Affirmed; conflict certified.*

KLINGENSMITH, C.J., and LEVINE, J., concur.

\* \* \*

5

*Not final until disposition of timely filed motion for rehearing.*