FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2024-1594
_____


MARIA JAIMICIA LLARIA
RODRIGUEZ-BARNES,

     Appellant,

     v.

STATE OF FLORIDA,

     Appellee.


_____


On appeal from the Circuit Court for Okaloosa County.
John T. Brown, Judge.

September 10, 2025


ROWE, J.

     Maria Rodriguez,[*] appeals her conviction for the first-degree premeditated murder with a firearm of her five-month-old infant son. She raises one issue on appeal. She argues that the trial court abused its discretion when, over her objection, it gave the standard jury instruction on abnormal mental condition. We affirm.

_____

     [*] Appellant testified at trial that her name is Maria Rodriguez. David Barnes testified that he and Rodriguez had divorced.

*Facts*

Rodriguez and David Barnes met in November 2018, and they married less than a year later when they learned Rodriguez was pregnant. She gave birth to their son in October 2019. Two months later, Barnes asked for a divorce. The couple briefly reconciled, but in March 2020, Barnes again asked Rodriguez for a divorce. Days after his request, Rodriguez called Barnes and asked him if he was sure he wanted a divorce. He confirmed his desire to end the marriage, and Rodriguez responded by apologizing for "what she was about to do" before she ended the call. She then sent a long text message to Barnes saying that she would give him his "freedom" from her and their son. After receiving the ominous message, Barnes was in a panic and repeatedly tried to contact Rodriguez, but she did not answer.

After her final phone call to Barnes, Rodriguez drove to The Boardwalk at Okaloosa Island and parked her truck where Barnes had proposed to her. Rodriguez placed a suicide note in the center console of her truck. The note stated, "I'm so sorry for taking [the victim] with me, but this is my final and only option . . . ." Rodriguez then picked up a Glock 17 and shot her five-month-old son in the chest. She then exited the truck and shot herself in the chest. A bystander saw Rodriguez on the ground, and called 911.

Deputy James Burnham responded to the call. He found Rodriguez and asked if someone had shot her. She responded in the negative and kept repeating that she could not breathe. Rodriguez made no mention of her son. Burnham did not realize that the child had also been shot until he searched Rodriguez's truck to locate the firearm and found the lifeless infant in the back floorboard of truck. Along with the handgun, the deputy found Rodriguez's suicide note. After the murder, Rodriguez spent time in the Baker Act unit of a local hospital.

The State charged Rodriguez with first-degree murder with a firearm.

*Pretrial*

Rodriguez pleaded not guilty to the charge. She did not raise an insanity defense. Because of Rodriguez's commitment under the

Baker Act, her unusual behavior at the crime scene, her suicide note, the taking of her child's life, and her attempt to take her own life, the State moved in limine to prohibit Rodriguez from making any references to potential diagnoses of postpartum depression, mental health conditions, and any other health conditions that could affect Rodriguez's mental health. The court deferred ruling on the motion.

After the jury was selected, the parties discussed jury instructions. The State stated that it included Florida Standard Jury Instruction (Criminal) 3.6(p) on abnormal mental conditions in the proposed instructions. Defense counsel did not object.

The parties revisited the State's motion in limine on the morning of the first day of the trial. The State explained that it was seeking to prevent any friends or family members from testifying that Rodriguez had a mental condition. Defense counsel agreed that such testimony would be inadmissible opinion evidence. The court granted the motion.

*Trial*

Deputy Burnham testified that he arrived at the scene of the shooting to find Rodriguez positioned on the ground on her back with her shirt off. Multiple firefighters were present. When Burnham observed Rodriguez's injury, he asked Rodriguez if she had been shot or if she shot herself. He then searched Rodriguez's truck to locate the firearm. Along with the firearm, Burnham found the five-month-old infant with an apparent gunshot wound to the chest in the back floorboard of the truck. Rodriguez never told Burnham that her baby was in the truck.

Brian Douglas testified that he was at The Boardwalk when he saw Rodriguez bleeding profusely. He called 911. He questioned Rodriguez, and she responded with her name and medical condition. But she made no mention of her infant son, who had suffered a gunshot wound to the chest, and who was just steps away from them in the truck.

Michael Simmons, a paramedic, responded to the 911 call. Rodriguez repeatedly told the paramedics that she could not

3

breathe, but she never mentioned her child and never asked the paramedics to render aid to him. Simmons was unaware of the presence of the infant until a deputy found him in the truck. The child was immediately declared dead from a gunshot wound to his chest. Simmons explained that there was a visible burn mark from the gun on the infant's onesie near the left chest.

Investigator Kelly Henderson served the arrest warrant on Rodriguez when she was released from the Baker Act unit of the hospital. When asked whether she knew why Henderson was there, Rodriguez admitted that she shot her son and herself.

The court dismissed the jury for the day and went over the jury instructions with the parties. The court noted that the State included the jury instruction on abnormal mental condition in the proposed jury instruction packet. The State argued that the instruction was proper because defense counsel elicited testimony from Investigator Henderson that Rodriguez was picked up from the Baker Act unit at the hospital. Defense counsel responded that one mention of the arrest in the Baker Act unit was insufficient to require the instruction. The court stated that it would revisit the issue at the close of the evidence.

The State then presented testimony from the FDLE analyst who examined a handwriting sample given by Rodriguez and compared it to the suicide note found in the truck.

David Barnes also testified. He explained the deterioration of the couple's relationship and his request for a divorce. He testified about his communications with Rodriguez on the day of the shooting.

The State rested. Rodriguez moved for a judgment of acquittal, arguing that the State failed to prove premeditation. The trial court denied the motion.

Rodriguez took the stand. Her testimony was limited to her claim that she had no recollection about what happened on the day she shot her five-month-old child and tried to commit suicide.

4

During the final charge conference, the parties revisited the requested jury instruction on abnormal mental condition. The State argued that the trial court should instruct the jury on abnormal mental condition because the defense elicited testimony that Rodriguez was picked up from the Baker Act unit of the hospital. The State added that Rodriguez's assertion that she remembered nothing that happened on the day she took her child's life invited the jury to question Rodriguez's mental capacity without notice and without expert testimony. Defense counsel responded that the instruction should not be given because Rodriguez was not presenting an insanity defense and no experts testified about her mental condition. Defense counsel contended that Rodriguez's statement that she did not recall what happened that day did not amount to an admission of mental illness. The court read the instruction over defense counsel's objection.

The jury found Rodriguez guilty of first-degree premeditated murder with a firearm. The trial court sentenced her to life in prison. This appeal follows.

*Analysis*

Rodriguez argues that the trial court reversibly erred when it gave the abnormal mental condition jury instruction over her objection because there was no evidence that Rodriguez suffered from a mental illness, an abnormal mental condition, or diminished capacity. We review for an abuse of discretion the trial court's decision to give the instruction. *See Kervin v. State*, 195 So. 3d 1181, 1182 (Fla. 1st DCA 2016).

To determine whether the trial court abused its discretion in giving the instruction, "we examine (1) whether the instruction given accurately states the applicable law; (2) whether the facts in the case support the instruction; and (3) whether the instruction given was necessary to allow the jury to properly resolve all issues in the case." *Id.* at 1182–83. All three factors are satisfied here.

First, the instruction accurately states the applicable law. In 2017, the supreme court adopted Florida Standard Jury Instruction (Criminal) 3.6(p). *In re Standard Jury Instructions in*

5

*Criminal Cases-Report 2016-01*, 213 So. 3d 680, 681 (Fla. 2017). The instruction provides:

> Mental illness, an abnormal mental condition, or diminished mental capacity is not a defense to any crime in this case. Any such evidence may not be taken into consideration to show that the defendant lacked the specific intent or did not have the state of mind essential to proving that [he] [she] committed the crime[s] charged [or any lesser crime].

Fla. Std. Jury Instr. (Crim.) 3.6(p). The instruction should be given only when "insanity is not an issue and if no notice of intent to rely on the defense of insanity has been filed." *Id.* The notes to the jury instruction explain this limitation:

> This instruction should be given only where it is applicable and appropriate under the facts of the case. "[D]iminished capacity is not a viable defense in Florida." *Evans v. State*, 946 So. 2d 1, 11 (Fla. 2006); *Lukehart v. State*, 70 So. 3d 503, 515 (Fla. 2011). Evidence of an abnormal mental condition not constituting legal insanity is inadmissible "for the purpose of proving either that the accused could not or did not entertain the specific intent or state of mind essential to proof of the offense, in order to determine whether the crime charged, or a lesser degree thereof, was in fact committed." *Chestnut v. State*, 538 So. 2d 820 (Fla. 1989). In some cases, however, such evidence, or something that jurors might interpret as such evidence, might be admitted presumably for another purpose or might simply be obvious or apparent from the facts of the case. In such cases, it could be appropriate in the court's discretion to give this instruction to avoid the possibility of juror confusion.

Rodriguez did not raise an insanity defense. And she makes no argument that the standard jury instruction does not accurately state the law.

Turning to the second factor, the facts of this case support giving the instruction. The trial court granted the State's motion

6

in limine to prevent Rodriguez from introducing evidence regarding possible postpartum depression, her Baker Act commitment, and other evidence of mental health conditions. Even so, evidence admitted at trial could have led the jury to believe that Rodriguez suffered from an abnormal mental condition. Defense counsel elicited testimony that Rodriguez was arrested after being released from the Baker Act unit of the hospital. Rodriguez testified that she did not remember anything that happened on the day of the shooting—even though on the day of her arrest she admitted to the police that she shot herself and her five-month-old son. This evidence—along with Rodriguez's shooting of her son at near point-blank range, her attempted suicide, her suicide note, and her failure to ask the police or paramedics to render aid to her son after the shooting—called into question whether Rodriguez suffered from an abnormal mental health condition.

As to the third factor, the instruction on abnormal mental condition was necessary to allow the jury to properly resolve all issues in the case. Rodriguez was charged with the first-degree premeditated murder of her infant son, which required the State to prove that the unlawful killing of the infant was "perpetrated from a premeditated design to effect the death of the person killed[.]" § 782.04(1)(a)1., Fla. Stat. (2020). "[P]remeditation is a fully-formed conscious purpose to kill" that need only last long enough for the accused to reflect on the nature of the act and its likely outcome. *Twilegar v. State*, 42 So. 3d 177, 190 (Fla. 2010).

Rodriguez's only defense was lack of premeditation. Without the instruction on abnormal mental condition, the jury may have impermissibly considered the evidence concerning Rodriguez's mental condition, her unusual conduct on the day of the shooting, and her claimed inability to remember anything from the day of the shooting as evidence of her inability to form a fully conscious intent to kill her son. *See Miller v. State*, 379 So. 3d 1109, 1126 (Fla. 2024) (holding that evidence of an abnormal mental condition cannot be used to prove that the defendant could not or did not form the necessary specific intent or state of mind to commit the charged offense).

Because the jury instruction on abnormal mental condition was an accurate statement of the law, supported by the facts of the

case, and necessary to allow the jury to properly resolve the issues in the case, the trial court did not abuse its discretion when it gave the instruction. But even assuming the trial court erred in giving the instruction, any error was harmless as there was no reasonable possibility that the error contributed to the conviction. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). We therefore AFFIRM the judgment and sentence.

OSTERHAUS, C.J., and LONG, J., concur.

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---

Jessica J. Yeary, Public Defender, and Victor D. Holder, Assistant Public Defender, Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Steven E. Woods, Assistant Attorney General, Tallahassee, for Appellee.